750 A.2d 795 ·

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Constance L. GOODWIN, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1997.

Decided April 17, 2000.

Bruce A. Antkowiak, Greensburg, for Constance L. Goodwin.

Allen Powanda, Greensburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION ANNOUNCING THE JUDGMENT OF THE COURT*

NIGRO, Justice.

In this appeal, Appellant Constance Goodwin argues that she was subjected to an investigatory stop without the requisite reasonable suspicion that she was engaged in criminal activity. We agree and therefore reverse the Superior Court's decision affirming the suppression court's denial of Goodwin's motion to suppress.[1]

On November 8, 1993, Pennsylvania State Police Trooper Anthony DeLuca received an anonymous telephone call at 11:15 a.m. The anonymous caller alleged that David Klink's girlfriend sold drugs to Klink's minor son, Ian, who Trooper DeLuca had recently arrested on drug charges. According to the anonymous caller, this woman sells drugs both from her home and from the office where she works. The caller further stated that the woman always carries a quarter pound of marijuana in a pink bag and that children buy drugs from her. Also, the woman takes a one-hour lunch break at about 12:15 and drives a blue Mustang, registration AKA 2168, which was parked that day on the inside corner of a parking garage. The caller described the woman as 25 years old, with red hair, and stated that she was wearing a red coat and red stockings on that particular day. The anonymous caller then provided the name and address of the woman's employer, the street she lived on, the location of the parking garage, and the route the woman took to walk to the garage.

A few months earlier, in August of 1993, Trooper DeLuca bought drugs from Ian Klink while undercover. Ian got the drugs from an apartment building. Trooper DeLuca did not

---

1. When reviewing the ruling of a suppression court, we are bound by the suppression court's factual findings that are supported by the record. *Commonwealth v. DeWitt,* 530 Pa. 299, 302, 608 A.2d 1030, 1031 (1992).

know from which apartment the drugs came from, but Ian referred to a female as the supplier. The building where Trooper DeLuca bought drugs had a different address than the female's home address provided by the anonymous caller. Trooper DeLuca also knew that Appellant Goodwin was David Klink's girlfriend and that they lived together.

After receiving the anonymous call, with the help of other officers, Trooper DeLuca watched the parking garage outside the office the caller identified. At about 12:10 p.m., Goodwin, who matched the caller's description, exited the office carrying a pink bag. She took the described route to the garage, entered the identified car, and traveled for several blocks. The troopers then stopped her car and told her that they had information that she was transporting marijuana.

Trooper DeLuca asked if he could search the car. He told Goodwin that she could consent or he would get a search warrant. After some discussion about how long the search would take, Goodwin ultimately agreed to the search and signed a consent form. When Goodwin removed the pink bag from the car, a trooper told her that they would search the bag since it had been inside the car. Goodwin then stated that drugs were in the bag. The trooper opened the bag and found marijuana. There were no drugs in the car.

Trooper DeLuca then asked Goodwin where she lived. She responded that she lived with David Klink and another male on the street identified by the caller. The troopers asked to search her apartment and she agreed. At the apartment, she verbally consented to a search of her bedroom, where the troopers found marijuana and drug paraphernalia. As a result, the troopers advised Goodwin of her Miranda rights and took a statement from her. Goodwin admitted that she sold drugs to Ian Klink and another male in August of 1993.

Goodwin was charged with offenses related to the sale of drugs to Trooper DeLuca in August of 1993 and the discovery of drugs in her bag in November of 1993.[2] The trial court

2. Specifically, Goodwin was charged with delivery of a controlled substance, possession with intent to deliver, corrupting the morals of a

denied a motion to suppress the drug evidence and Goodwin's statement to the police. After a bench trial, Goodwin was found guilty on all counts and sentenced to a total of one and a half to five years incarceration.

On appeal, the Superior Court reversed and awarded Goodwin a new trial, finding that the trial court should have suppressed the drug evidence from the pink bag because the search of the bag was outside the scope of Goodwin's consent to search her car. The Commonwealth petitioned for clarification as to the sentence for the charges related to the August drug sale. The Superior Court issued another opinion awarding a new trial on the charges related to the drugs found in Goodwin's bag in November but affirming the sentence on the charges related to the drug sale in August. Thus, only those charges related to the August drug sale are the subject of this appeal.

Goodwin argues that the investigatory detention she was subjected to was invalid since the anonymous tip and other purported corroborating evidence did not create a reasonable suspicion that she was engaged in criminal activity.[3] We agree.

▆▆▆ An investigatory stop, which subjects a suspect to a stop and a period of detention but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *Commonwealth v. Melendez*, 544 Pa. 323, 327–33, 676

minor, and criminal conspiracy in August and possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia in November. The trial court severed the counts related to the two incidents for two non-jury trials but ultimately sentenced Goodwin on all charges.

3. Although Goodwin raises her claim under both Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution, we note that Pennsylvania has consistently followed Fourth Amendment jurisprudence in stop and frisk cases. *See, e.g., Commonwealth v. Jackson*, 548 Pa. 484, 489, 698 A.2d 571, 574 (1997); *see also Commonwealth v. Melendez*, 544 Pa. 323, 327–28, 676 A.2d 226, 230 (1996) (*Terry v. Ohio* sets forth standard for the reasonableness of a search under Article I, Section 8 of the Pennsylvania Constitution).

A.2d 226, 228–30 (1996). Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability. *Commonwealth v. Wilson*, 424 Pa.Super. 110, 115, 622 A.2d 293, 295–96 (1993) (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990)). Thus, quantity and quality of information are considered when assessing the totality of the circumstances. *Id.* If information has a low degree of reliability, then more information is required to establish reasonable suspicion. *Id.*

This Court has recently addressed the role of anonymous tips in providing a basis for an investigatory stop. In *Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997), a police officer responded to a radio report stating that a man in a green jacket was carrying a gun at a particular location. No additional details were provided. When the officer arrived at the identified location, he saw a number of people including the defendant who was wearing a green jacket. Based solely upon the anonymous call, the officer stopped and searched the defendant.

Relying upon *Commonwealth v. Hawkins*, 547 Pa. 652, 692 A.2d 1068 (1997), a factually similar case [4], the Court held in *Jackson* that the anonymous tip did not justify a stop and frisk of the defendant. *Jackson* at 494, 698 A.2d at 576. In *Hawkins*, a plurality of the Court explained that when police receive an anonymous call alleging that a person of a particular description is carrying a gun at a particular location, and the police broadcast that information to patrol cars, neither the dispatcher nor the officers in their cars know whether the information is reliable. *Hawkins*, 547 Pa. at 656, 692 A.2d at 1070. The Court observed that an anonymous tip may be nothing more than a mere prank call. *Id.* At the same time, it may be based on no more than the caller's unparticularized

4. In *Hawkins,* a police officer also responded to a radio call stating that there was a man with a gun at a particular location. The radio call included a description of the suspect. When the officer arrived at the location, he saw the defendant who fit the description in the call. Based upon the anonymous call, the officer stopped and frisked the defendant.

hunch. *Jackson,* 548 Pa. at 490, 698 A.2d at 574; *see also White,* 496 U.S. at 329, 110 S.Ct. at 2415 (anonymous tips provide "virtually nothing from which one might conclude that the caller is either honest, or his information reliable"). Because of its unreliability, an anonymous radio call alone is insufficient to establish a reasonable suspicion of criminal activity. *Jackson, supra; Hawkins, supra.*

The Court in *Jackson* further explained that the fact that the police proceeded to the designated location and saw a person matching the description in the call did not corroborate any alleged criminal activity. *Jackson,* 548 Pa. at 492, 698 A.2d at 574–75 (quoting *Hawkins,* 547 Pa. at 656–57, 692 A.2d at 1070). Since anyone can describe a person who is standing in a particular location, "[s]omething more is needed to corroborate the caller's allegations of criminal conduct." *Id.* In the typical anonymous caller situation, the police will need an independent basis to establish reasonable suspicion. *Id.*

As explained in *Hawkins,* where the police are acting on information supplied anonymously, the public will receive its full measure of protection by police who act within constitutional restraints. *Hawkins,* 547 Pa. at 657–58, 692 A.2d at 1071. When the police receive unverified information that a person is engaged in illegal activity, the police may observe the suspect and conduct an investigation. If police surveillance produces a reasonable suspicion of criminal conduct, the suspect may be stopped and questioned. *Id.*

Since the police in *Jackson* and *Hawkins* acted on anonymous tips and had no independent reason to believe that the suspects may have been involved in criminal activity, the Court reversed the judgments of sentence. *See also Commonwealth v. Kue,* 547 Pa. 668, 692 A.2d 1076 (1997) (opinion announcing the judgment of the Court) (where, other than anonymous tip, there was no reason to believe that criminal conduct was afoot, an officer's stop was unsupported by reasonable suspicion).

■ Applying the rationale in *Jackson* and *Hawkins* to the instant case, the Superior Court's decision cannot stand.

Here, police proceeded to Goodwin's office building in response to an anonymous tip alleging that Goodwin was selling drugs. As *Jackson* and *Hawkins* make clear, an anonymous tip alone, given its unreliability, is insufficient to give rise to a reasonable suspicion that criminal activity is afoot. Thus, the police needed "something more" than just the anonymous tip to justify conducting an investigatory stop of Goodwin.

The police, however, saw no unusual activity while they watched Goodwin and had no reason independent of the anonymous tip to suspect that criminal activity was afoot. Thus, the allegations of criminal conduct furnished by the anonymous tipster remained uncorroborated. Under *Jackson*, such an uncorroborated anonymous tip is insufficient to provide the basis for an investigatory stop.

The Superior Court found, and the Commonwealth argues, that the anonymous caller's tip was similar to the tip in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), where the United States Supreme Court held that police corroboration of an anonymous tip that predicted a person's future actions justified an investigatory stop.[5] The tipster in *Alabama v. White* told the police that the defendant would leave her apartment at a particular time, travel to an identified motel, and that she would have drugs in a brown attaché case. The police stopped the defendant's car just short of the identified motel. In upholding the stop, the United States Supreme Court found that the information provided by the caller demonstrated "insider information—a specific familiarity with respondent's affairs." *White*, 496 U.S. at 332, 110 S.Ct. at 2417. The Court then held that if an anonymous tip provides such insider information, including

---

**5.** The United States Supreme Court recently reaffirmed the requirement that anonymous tips must contain predictive information in order to give the police reasonable suspicion in *Florida v. J.L.*, —— U.S. ——, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The Court explained that in order for an anonymous tip to have sufficient indicia of reliability the tip must exhibit predictive information that can be corroborated by police officers. *Id.* at ——–——, 120 S.Ct. at 1378–79. In the absence of such predictive information, the anonymous tip leaves the police without any means to test the informant's knowledge and thus, cannot provide the officers with reasonable suspicion. *Id.*

facts relating to "future actions of third persons ordinarily not easily predicted," then police corroboration of this insider information can support a finding of reasonable suspicion. *Id.* Unlike the tip in *Alabama v. White,* however, the tip in the instant matter did not predict behavior that showed a familiarity with Goodwin's personal affairs. Anyone in Goodwin's office building could have known what she was wearing that day, which kind of car she drove and were she parked it, and that she went to lunch around noon. The intimate knowledge found in *Alabama v. White* is simply not present here.

■■■■ After the illegal stop, Goodwin consented to a search of her apartment where she admitted that she sold drugs to Ian Klink in August. Goodwin argues that her statement is the fruit of the illegal stop and must be suppressed. We agree.[6] The voluntariness of a statement is a threshold requirement for its admissibility. *Commonwealth v. Yocham,* 473 Pa. 445, 455–56, 375 A.2d 325, 330–31 (1977). In addition, the causal chain between the initial illegality and the statement made thereafter must be broken so that the statement is an act of free will that is purged of the primary taint. *Id.*

While Goodwin received *Miranda* warnings, we cannot conclude that the statement was an act of free will purged of the primary taint. During the illegal stop of her car, Goodwin was caught with drugs. Immediately thereafter, the police asked to search her apartment. Once there, more drugs were found and Goodwin then confessed to her involvement in the August drug sale. In these circumstances, while the confession was voluntary, it was not free of coerciveness as it resulted shortly after the unlawful stop without intervening circumstances. *See Yocham,* 473 Pa. at 455, 375 A.2d at 330 (considering temporal proximity of illegal act and confession and intervening circumstances to determine admissibility of confession).

6. In addition to granting Goodwin's allocatur petition as to the validity of the stop, the Court granted allowance of appeal as to whether her statement was the fruit of an illegal stop. While the Superior Court noted that Goodwin did not pursue the voluntariness of her statement on appeal, Goodwin has raised all along that her statement was the fruit of an illegal stop.

■ The Commonwealth concedes that there were no intervening circumstances and that the confession was within two hours of the stop. It argues, however, that in light of Trooper DeLuca's involvement in the drug purchase from Ian Klink, the evidence obtained at the apartment was the result of an independent source. Before receiving the anonymous tip, Trooper DeLuca suspected that the supplier of his purchase was a female. He also knew that Goodwin was David Klink's girlfriend. This information, however, is inadequate to establish an independent source for the fact that Goodwin was the supplier of drugs in the August sale. Thus, Goodwin's statement should have been suppressed as it was the fruit of the illegal stop.

In sum, since the uncorroborated anonymous tip did not create the reasonable suspicion necessary to stop Goodwin for investigation, the statement regarding Goodwin's involvement in the August drug transaction, which was a fruit of the illegal stop, must be suppressed. Thus, we reverse the decision of the Superior Court affirming the trial court's denial of Goodwin's motion to suppress the statement and remand for further proceedings consistent with this opinion.

Justice ZAPPALA filed a concurring opinion in which Chief Justice FLAHERTY joins.

Justice CASTILLE filed a dissenting opinion in which Justice NEWMAN joins.

ZAPPALA, Justice, concurring.

Although I disagree with the majority's Fourth Amendment analysis pursuant to the United States Supreme Court's decision in *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), I find that its conclusion is supported by Article I, Section 8 of the Pennsylvania Constitution. Accordingly, I concur in the result reached by the majority.[1]

1. The record establishes that Appellant asserted in her suppression motion that the stop of her vehicle was illegal and in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. She further

In *White,* the anonymous caller informed the police that Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a certain time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel and that she would be in possession of about an once of cocaine inside a brown attaché case. Police officers proceeded to the apartment complex and saw a brown Plymouth station wagon with a broken right taillight parked in front of the 235 building. They observed White exit the building, carrying nothing in her hands and enter the station wagon. The police officers followed the vehicle as it drove the most direct route to Dobey's Motel. The officers stopped the vehicle just short of the motel. Marijuana was discovered in an attaché case and cocaine was found in White's purse.

Acknowledging that it was a close case, the Court held that the anonymous tip coupled with the police corroboration established reasonable suspicion to support the investigatory stop.[2] The Court held that the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller. It emphasized that the caller predicted White's future behavior and possessed a special familiarity with her affairs.

Applying *White* to the instant case, I conclude that no violation of the Fourth Amendment occurred.[3] Similar to the anonymous caller in *White,* the informer here relayed informa-

preserved this claim in her post-trial motions as well as in the appellate courts.

Although Appellant has not engaged in a complete analysis of a state constitutional claim pursuant to *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), we have held that the failure to do so does not result in waiver of the state constitutional claim. *Commonwealth v. Arroyo,* 555 Pa. 125, 133 n. 6, 723 A.2d 162, 166 n. 6 (1999); *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995); *Commonwealth v. Swinehart,* 541 Pa. 500, 509 n. 6, 664 A.2d 957, 961 n. 6 (1995).

**2.** The Court noted that every detail of the tip had not been verified at the time of the stop, such as the name of the woman leaving the building, the precise apartment from which she left, and the suggestion that White would be carrying a brown attaché case.

**3.** In reaching this conclusion, I have afforded the suppression court's finding of fact the deference described in *Ornelas v. United States,* 517

tion regarding where Appellant was located, i.e., her employer's place of business, when she would leave for lunch, the travel route she would take to the garage, where she parked her car, the description of her car including the license plate number and that she would be carrying a pink bag.[4] Upon a close scrutiny of both cases, I find that the information given by the anonymous caller in the present case and the subsequent police corroboration demonstrate a similar degree of reliability as that found to constitute reasonable suspicion to support an investigatory stop under the Fourth Amendment in *Alabama v. White*.[5]

Analyzing the same claim under Article 1, Section 8 of the Pennsylvania Constitution, however, I reach a contrary result. In determining whether an investigatory stop is based on reasonable suspicion of criminal activity, the interest of the public must be balanced against the suspect's right to personal security. It is this weighing of interests which leads me to a conclusion distinct from that reached under an analysis of the Fourth Amendment.

In *Alabama v. White*, the Supreme Court did not effectively distinguish between information contained in an anonymous tip which is readily observable by a casual acquaintance of the accused and information which is not.[6] I find that the absence

U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In *Ornelas*, the United States Supreme Court held that the trial court's ultimate determination as to whether police officers had reasonable suspicion to stop an individual is subject to *de novo* review on appeal, rather than a deferential or abuse of discretion standard. The Court made clear, however, that reviewing courts "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 699, 116 S.Ct. at 1663.

4. Unlike the anonymous tip in *White*, the caller here also informed the police of the specific apparel Appellant was wearing.

5. As noted in my dissenting opinion in the consolidated cases of *Commonwealth v. Wimbush*, 174 M.D. Appeal Dkt. 1996, and *Commonwealth v. White*, 25 W.D. Appeal Dkt. 1996, although I may question the Court's reasoning in *White*, our Court is bound by it as there is no discernable difference between the factual scenarios presented.

6. The Court asserted that the anonymous tip included details regarding "future actions of third parties ordinarily not easily predicted." *White*,

of such a qualification renders the police corroboration of an anonymous tip virtually meaningless and fails to increase the reliability of the information regarding the accused's alleged criminal activity.

The instant facts demonstrate this point. The information which was found by the lower courts to be corroborated by independent police investigation includes Appellant's place of employment, her physical characteristics and apparel on the day of the investigatory stop, including the fact that she would be carrying a pink bag, her type of car and registration number, the location of the parking garage and the route Appellant took to arrive at her car during her 12:15 lunch hour. I fail to see how such corroboration imparts reliability upon an otherwise unreliable anonymous tip.[7]

The call was placed at 11:15 a.m. and police stopped Appellant approximately an hour later. Thus any individual who saw Appellant arrive at work that morning would possess the same detailed information regarding her apparel, physical characteristics, type of vehicle and the location where she parked her car. Moreover, the time that she takes her lunch and the direction she walks to reach her parked vehicle is information available to anyone she worked with or who had seen her leave for lunch on a previous workday. The corroboration of such commonplace and unsuspicious activities can not give rise to a reasonable suspicion of criminal activity under Article I, Section 8 of the Pennsylvania Constitution. Otherwise, as noted by Justice Stevens in his dissenting opinion in *White*, "every citizen is subject to being seized and questioned

496 U.S. at 332, 110 S.Ct. at 2417. To the contrary, however, Justice Stevens's cogent dissent recognized that "an anonymous neighbor's prediction about somebody's time of departure and probable destination is anything but a reliable basis for assuming that the commuter is in possession of an illegal substance." 496 U.S. at 333, 110 S.Ct. at 2417–18.

7. The officer who stopped Appellant had previously arrested David Klink on drug charges. The officer had reason to believe that Klink's drug supplier was a female and that Appellant was Klink's girlfriend. These facts, however, do not constitute independent evidence that would give rise to a reasonable suspicion that Appellant was Klink's drug supplier.

by any officer who is prepared to testify that the warrantless stop was based on an anonymous tip predicting whatever conduct the officer just observed." 496 U.S. at 333, 110 S.Ct. 2412.[8] To satisfy this Commonwealth's Constitution, the information contained in the anonymous tip and corroborated by independent police investigation must reveal an awareness of the suspect's activities which would not be readily observable by the general public. This is the only method to ensure that the anonymous caller's information regarding the accused's illegal activities is reliable.

As noted by the majority, this conclusion is supported by our recent decisions in *Commonwealth v. Hawkins,* 547 Pa. 652, 692 A.2d 1068 (1997), and *Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571 (1997). In *Commonwealth v. Hawkins,* an officer responded to a police radio broadcast that a man of a particular description was carrying a gun. The source of the report was unknown. We held that the anonymous call and subsequent police corroboration was insufficient to establish reasonable suspicion to support an investigatory stop. We observed that if police "respond to an anonymous call that a particular person at a specified location is engaged in criminal activity, and upon arriving at the location see a person matching the description and nothing more, they have no certain knowledge except that the caller accurately described someone at a particular location." *Id.* at 656–657, 692 A.2d at 1070. The same can be said of an anonymous tip that "predicts" an accused's location, physical appearance, and an unsuspicious routine activity.

In *Commonwealth v. Jackson,* a case factually indistinguishable from *Hawkins,* we reiterated that anonymous tips should be treated with particular suspicion as they may be a joke or may be based upon no more than a caller's unparticularized hunch. We concluded that the police must be able to corrobo-

8. Justice Stevens recognized that the vast majority of those in the law enforcement community would not adopt such a practice, but stated that the Fourth Amendment was intended to protect citizens from the overzealous officer as well as the conscientious one.

rate more than a mere description and location of the accused.[9]

Accordingly, I would hold that reasonable suspicion pursuant to Article I, Section 8 of the Pennsylvania Constitution did not exist to support the investigatory stop of Appellant. As found by the majority, I would further hold that Appellant's statements regarding her prior drug sales to Klink and her consent to search her vehicle should be suppressed as the fruit of an illegal stop.[10]

Chief Justice FLAHERTY joins in this Concurring Opinion.

CASTILLE, Justice, dissenting.

In finding that the Fourth Amendment to the United States Constitution requires suppression of the evidence in this case, the majority circumvents binding federal precedent. Because

9. We cited *Alabama v. White* in both *Hawkins* and *Jackson* for the proposition that an anonymous tip may provide reasonable suspicion for an investigatory stop if the tip accurately predicts future behavior of an individual. We were not faced, however, with the issue of whether particular information given by an anonymous source constituted a prediction of a third party's future conduct.

10. In his dissenting opinion, Mr. Justice Castille concludes that in analyzing whether an investigative detention supported by reasonable suspicion occurred, the Pennsylvania Constitution is satisfied by the prevailing federal constitutional test. This is not completely accurate. While minimum federal constitutional guarantees are equally applicable to the analogous state constitutional provision, the state has the power to provide broader standards than those mandated by the federal constitution. *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983).

In *Commonwealth v. Hawkins*, 547 Pa. 652, 656 n. 2, 692 A.2d 1068, 1069 n. 2 (1997), we stated in dictum that the case of *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226, 230 (1996), "makes it clear that the requirements of *Terry* are also the requirements of Art. I, Section 8 of the Pennsylvania Constitution...." In *Melendez*, however, we merely concluded that because the investigative stop violated the Fourth Amendment, the items seized must be suppressed under Article I, Section 8 of the Pennsylvania Constitution. It does not follow from this conclusion that a Fourth Amendment violation arising from an investigatory stop must be found in order to find a violation under Article I, Section 8. I find that Article I, Section 8 of the Pennsylvania Constitution requires a broader standard than that applied by the United States Supreme Court in *Alabama v. White* in interpreting whether an anonymous tip is sufficient to establish reasonable suspicion to support an investigatory stop.

I believe that this case is controlled by *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), I respectfully dissent.[1]

In *White*, a police officer received a telephone call from an anonymous person stating that White would be leaving a specified apartment at a particular time in a brown Plymouth station wagon with a broken taillight; that she would be going to a specified motel; and that she would be in possession of about an ounce of cocaine inside a brown attaché case. After arriving outside the apartment building, the officer and his partner observed White leave the building—with *nothing* in her hands—and enter a station wagon similar to the one

1. Mr. Justice Zappala concurs with the majority, properly recognizing that the decision of the Majority incorrectly applies the Fourth Amendment to dispose of the search and seizure issue; however, he proceeds to determine that Article I, Section 8 of the Pennsylvania Constitution provides an independent basis on which to suppress the evidence at issue. In footnote ten, Mr. Justice Zappala indicates his belief that this Court has not provided any authority which would render the Fourth Amendment coextensive with Article I, Section 8 when determining what quantum of reasonable suspicion suffices to initiate an investigative stop. However, this Court has provided such authority. In *Commonwealth v. Jackson*, 548 Pa. 484, 489–90, 698 A.2d 571, 574 (1997), this Court initially noted, as does Mr. Justice Zappala, the simple axiom that this Court may provide more extensive protections under the Pennsylvania Constitution if it so chooses. However, the Court proceeded to observe that "... Pennsylvania has *always followed Terry* in stop and frisk cases...." *Id.*, citing *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969). *See also, Commonwealth v. Morris*, 537 Pa. 417, 422, 644 A.2d 721, 724 (1994)(rejecting the appellant's suggestion to depart from *Terry* in interpreting Article I, Section 8 and determining that the requirements of *Terry* and Article I, Section 8 are coextensive: "we have long recognized that the limited [*Terry* frisk] is likewise permissible under the Pennsylvania Constitution."). Indeed, in *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987)(Zappala, J., concurring), Mr. Justice Zappala recognized the applicability of *Terry* under Article I, Section 8 in the limited context of investigative stops, while indicating his belief that *Terry* should not be applied to eviscerate the traditional probable cause requirement for seizures outside the scope of *Terry*. *Id.* at 300, 535 A.2d at 1046 ("even under [*Hicks*], in which we *adopted* the *Terry* exception to probable cause for a search and/or seizure, we required a reasonable suspicion that a crime was in process" (emphasis added)). Thus, in the context of a *Terry* stop, the more expansive interpretation of Article I, Section 8 that Mr. Justice Zappala proffers today differs from the settled and sound jurisprudence of this Court.

described. The officers followed the vehicle as it proceeded along the most direct route towards the specified motel and stopped it before it reached the motel. After receiving permission to conduct a search, the officers found a brown attaché case. Upon request, White provided the combination to the lock. The officers found marijuana inside and placed White under arrest. A subsequent search revealed cocaine in her purse.

After White was tried and convicted of several possession charges, the Alabama Court of Criminal Appeals determined that the officers lacked the reasonable suspicion necessary under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to justify the initial investigatory stop of respondent's vehicle; therefore, the marijuana and cocaine were deemed fruits of an unlawful detention. The Court of Criminal Appeals concluded that White's motion to suppress the evidence should have been granted and reversed her conviction. The Supreme Court of Alabama denied the State's petition for a writ of *certiorari.*

The United States Supreme Court granted *certiorari* in order to resolve a conflict in the state and federal courts "over whether an anonymous tip may furnish reasonable suspicion for a stop." *Id.* at 328, 110 S.Ct. at 2415. The United States Supreme Court noted that, similar to determinations of probable cause, reasonable suspicion determinations are considered under the "totality of the circumstances—the whole picture." *Id.* at 330, 110 S.Ct. at 2416, *citing United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). However, reasonable suspicion is a less demanding standard than probable cause, not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Id.*

Applying this lesser standard to the facts of the case before it, the United States Supreme Court concluded that, when the officers stopped White, the anonymous tip had been sufficient-

364

ly corroborated so as to furnish reasonable suspicion that White was engaged in criminal activity; therefore, the investigative stop did not violate the Fourth Amendment to the United States Constitution. The Court acknowledged that important details of the anonymous tip—specifically, the fact that White would be carrying an attaché case that allegedly contained drugs—had gone uncorroborated. However, the tipster had been correct about White's time of departure, place of departure, vehicle in which she departed, and apparently White's destination.[2] Thus, the Court reasoned that "the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller." *Id.* at 332, 110 S.Ct. at 2417.[3] The corroboration of predictive information pertaining to White's future behavior was significant "because it demonstrated inside information—a special familiarity with respondent's affairs." *Id.* Since only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about the individual's illegal activities. *Id.* I have little doubt how this case should be resolved in light of *White.*

Further, in *Commonwealth v. Hawkins*, 547 Pa. 652, 692 A.2d 1068 (1997), this Court relied on *White* in attempting to impart guidance to police investigations in the area of search and seizure. Although the anonymous tip in *Hawkins* did not predict any future behavior, this Court noted that, "if the tip is

2. The Court acknowledged that the officers could not have been positive that White was driving to the specified motel, since they stopped her before she reached the motel.

3. The United States Supreme Court's recent decision in *Florida v. J.L.*, —— U.S. ——, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), in no way impacts on the application of *White* to the cases *sub judice*. In *J.L.*, unlike in *White* or the cases *sub judice*, the anonymous tip did not contain any predictive information, but merely stated that a young black male wearing a plaid shirt and standing at a particular bus stop—facts that could be reported by anyone looking out a window—was carrying a gun. Accurately predicting someone's movements, however, is an entirely different matter. Thus, *J.L.* is more analogous to *Hawkins, supra.*

anonymous, police may reasonably rely on it if it is predictive of the suspect's behavior." *Id.* at 656 n. 3, 692 A.2d at 1070 n. 3. In its decision today, the majority abandons the principles of *Hawkins* and *White.*

The relevant facts of the case at issue, as summarized by the trial court, indicate that on November 8, 1993, Trooper Anthony DeLuca of the Pennsylvania State Police received an anonymous telephone call at about 11:15 a.m. The caller advised the trooper that a woman who worked in a nearby law office was selling drugs to schoolchildren out of the office and at her residence. The caller further stated that the woman was the girlfriend of a man named David Klink, and that the woman had sold drugs to Klink's son, Ian. Additionally, the caller provided a physical description of the woman and stated that she would be leaving her office for lunch between 12:10 and 12:15 p.m., that she would proceed by a specified route to her blue Ford Mustang with Pennsylvania registration number AKA 2168, parked on the inside corner of a parking garage on Maple Avenue, and that she would be carrying illegal drugs in a small pink carrying bag. The phone call with the tipster lasted three or four minutes, during which the tipster stated that he had seen the drugs in appellant's pink bag that morning. Furthermore, Trooper DeLuca testified that, at the time of this phone call, he already had independent reason to believe that Ian Klink had purchased drugs from a female seller. In an undercover capacity, Trooper DeLuca had purchased drugs from the younger Klink outside of the building where DeLuca knew that Klink lived with his father and appellant. Klink had mentioned at the time that his supplier was a female.

Next, Trooper DeLuca and several other officers set up surveillance at a point where they could observe both the parking garage and the law office in which appellant worked. At approximately 12:08 p.m., a female exactly matching the caller's detailed description exited the law office carrying a pink bag. She followed the route that the caller had predicted she would follow and entered the Ford Mustang described by

the caller. The troopers followed her vehicle for several blocks and then pulled her over for an investigative stop.

The only question for purposes of this appeal is whether the officers had a reasonable suspicion that criminal activity was afoot when they pulled appellant over. If they did, then the subsequent permission that they received to search her residence was not tainted by the illegality of the stop, and the contraband found therein is not excludible.

The predictive detail that was corroborated in *White*—namely the defendant's itinerary—was corroborated in great detail here. A person with access to an individual's itinerary is likely to also have access to reliable information about the individual's illegal activities. *White, supra* at 332, 110 S.Ct. at 2417. Moreover, the police here corroborated the fact that appellant was carrying the same pink bag in which the tipster claimed to have seen drugs that very morning, unlike in *White,* where the officers were unable to corroborate the caller's prediction that White would be transporting the drugs in a certain type of attaché case and were also unable to establish the basis of the tipster's knowledge. Lastly, Trooper DeLuca had independently formed reasonable suspicion regarding appellant's drug trafficking activities based on the statements by her boyfriend's son. The combination of these statements with the subsequent detailed, predictive, and fully corroborated tip furnished Trooper DeLuca with a degree of suspicion that criminal activity was afoot far greater than the suspicion engendered by the facts of *White.*[4] Consequently,

4. The majority discounts the predictive aspect of this tip by claiming that it did not show "a familiarity with Goodwin's personal affairs," contrasting this tip with the "intimate knowledge found in *White.*" *See* Maj. Opin. at 799. At the risk of being laborious, I reiterate that the tip in *White* furnished the suspect's identity, time of departure, place of departure, vehicle type, method of transporting the drugs, and destination. Of these, the officers were only able to fully corroborate the identity, place of departure, and vehicle type. Here, the officers corroborated *all* of the above details, in addition to the predicted route taken by the suspect from the office to the car and the predicted method of transporting the drugs (the prediction in *White* was simply wrong on this point). Furthermore, the officers here established the basis of the tipster's knowledge and were also in possession of probative, indepen-

Trooper DeLuca's initiation of an investigative stop was fully justified.

In determining that the *Terry* stop in this case violated the Fourth Amendment, the majority opinion relies on the fact that the police lacked independent corroboration of the *criminal* aspects of the anonymous tip. However, nothing in *White* requires such corroboration. All *White* requires is that the police corroborate the *predictive* aspects of the tip. By requiring corroboration of the criminal aspects of the tip, the majority raises the bar for a permissible stop under *White* from reasonable suspicion to probable cause.

The societal interest in allowing police officers to ask questions on the basis of a common-sense suspicion is compelling. One wonders how else police officers can advance cases such as this without asking questions of the suspects. The only possible alternative here was to allow the suspect to pass on unimpeded and follow her in an attempt to discover direct evidence of criminal conduct. But following her further would most likely yield no rewards unless the suspect was so simple-minded as to carry on her criminal activity in public. To say that the officers could have procured the cooperation of other witnesses is to ignore the reality that gives rise to anonymous reports of criminality to begin with—namely, citizens are frequently in mortal fear of drug dealers, and often with good reason. One can only conclude that there will frequently be nothing that officers can do in the wake of this opinion to justify an investigative stop. Instead, they must allow criminal activity to go forth unabated, even when concerned but fearful citizens try to alert them to such criminal activity, when they first corroborate the predictive information supplied by these citizens, and when all they seek to do is ask questions.

This decision protects our citizens against what the majority must conclude to be the ominous specter of having to answer a few questions posed by hard-pressed police; all it surrenders in exchange is the ability of law enforcement officers to do

dently acquired information concerning appellant's involvement with controlled substances.

their jobs. Moreover, the decision today disregards the pronouncements of the nation's high Court.[5] Therefore, I dissent.

Justice NEWMAN joins this dissenting opinion.

5. Of course, the United States Supreme Court can once again correct the mistake the majority makes today regarding the scope of the Fourth Amendment. *See, Pennsylvania v. Labron,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(reversal by U.S. Supreme Court on Fourth Amendment issue); *Pennsylvania v. Kilgore,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(same); *Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988)(same); *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)(same).