COMMONWEALTH OF
PENNSYLVANIA,
Appellee

v.

Christopher FELL, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 27, 2006.

Filed June 7, 2006.

Gregory G. Schwab, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Pittsburgh, for Commonwealth, appellee.

BEFORE: DEL SOLE, P.J.E., STEVENS, and ORIE MELVIN, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Luzerne County, which convicted Appellant on all five drug-related charges he faced at bench trial. Sentenced to a term of 12 to 24 months' incarceration, Appellant filed timely notice of appeal challenging the denial of his pretrial motion to suppress evidence and statements obtained from a vehicular *Ter-*

*ry* [1] stop and consent search set into motion by an anonymous telephonic tip. We affirm.

■ ¶ 2 Our standard of review where an appellant appeals the denial of a suppression motion is well-established:

We are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Commonwealth v. Scott,* 878 A.2d 874, 877 (Pa.Super.2005) (internal citations omitted).

¶ 3 Reviewing the record before us, we rely on learned Judge Joseph M. Augello's apt recitation of fact, which he made after receiving testimony and oral argument at Appellant's suppression hearing:

THE COURT: Okay. Thank you. Finding of fact[:] The police officers received an anonymous tip [made from a payphone] stating that [Appellant] along with Mike Brostoski and Suzanne Moore would be transporting a drug shipment [from New York, having already departed at approximately 9:30 a.m., and arriving] that evening to the apartment of Bethany Storm in Hilltop Apartments in Edwardsville. The caller also stated that the vehicle was a purple Mercury which was owned by Suzanne Moore's mother.

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The call was received by the Luzerne County Communication Center and the information was relayed to Officer Shawn Brown of the Edwardsville Police Department at approximately 2:30 p.m. on August 25, 2004. Officer Brown requested the assistance of Officer Ned Palka of the Kingston Police Department. The police officers then began an investigation to corroborate the anonymous tip. Officer Brown was aware through a previous encounter that Miss Diane Space was the mother of Suzanne Moore. He ran Miss Space's information through the vehicle database and discovered that she was the owner of the 1994 Mercury. He also noted the registration number of the vehicle.

The officer then took steps to determine whether Bethany Storm's apartment was within the Hilltop Apartments in Edwardsville which is a large apartment complex and also well known to the officer as a high crime area and a high drug area. The officers had numerous experiences within this apartment complex involving narcotics.

The officers were also aware that [Appellant] was—had been investigated in a prior narcotic[s] encounter. After conducting an investigation, the police officers went to the scene of the Hilltop Apartments and staked out the area involving the apartment which was under suspicion [because] the anonymous caller had indicated that the shipment of marijuana would be returning [there]. At the scene [the officers] witnessed a purple Mercury bearing the same registration as Diane Space's carrying the three individuals. Officer Palka identified one of the individuals as [Appellant].

The car then pulled in front of a parking space of Bethany Storm's building. At this point, tak[ing] into account the anonymous tip and the information gathered through their independent investigation prior to this time, the officers engaged in an investigatory stop of the individuals in the car. The police officers placed [Appellant] in the back of a police car in this matter for the protection of the police officers[, whose presence drew 20 or so onlookers who began to yell and scream] while the investigation occurred.

They had the permission of the driver of the vehicle to search the vehicle and upon searching the vehicle with the permission of the driver they seized in the trunk of the vehicle a quantity of marijuana. The search of the vehicle was valid and [the officers] had consent.

Conclusions of law[:] The search of the vehicle was valid and consensual. The police officers had reasonable suspicion necessary to detain [Appellant] based upon the anonymous tip and their independent investigation which corroborated the tip. It was clear from the events that the person who made the tip had knowledge of [Appellant's] future actions and, therefore, the actions of the officers were reasonable. There's no violation[ ] of the United States or Pennsylvania Constitutions and the substances of narcotics are admissible at the time of trial.

N.T. 6/30/05 at 103–106.

■ ¶ 4 Appellant contends that "[t]he police in this case lacked reasonable and articulable suspicion that [Appellant] was involved in criminal activity when they stopped him and detained him[ ]" on the basis of an anonymous tip.[2] We disagree.

**2.** Though his appellate brief fails to specify the constitutional grounds for his challenge, Appellant invoked both Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution at the suppression hearing. Moreover, Appellant advances the *Terry* standard for reasonableness of a stop and search, which standard

Because the tip predicted Appellant's future actions not ordinarily easily predicted, police corroboration of the prediction itself supplied the officers with reasonable suspicion to believe that Appellant and his companions were transporting illegal drugs.

■■■■ ¶ 5 An investigatory stop, which subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. *Terry, supra.*

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.... Reasonable suspicion, like probable cause, is dependent on both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' ... that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.

*Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

■■■■ ¶ 6 Because an anonymous tip typically carries a low degree of reliability, more information is usually required be-

fore investigating officers develop the reasonable suspicion needed to support an investigatory stop of a suspect. *Commonwealth v. Wimbush,* 561 Pa. 368, 750 A.2d 807 (2000). An anonymous tip may be nothing more than a mere prank call or the caller's unparticularized hunch, and thus, without more, has been held to provide "virtually nothing from which one might conclude that the caller is either honest, or his information reliable." *White,* 496 U.S. at 329, 110 S.Ct. 2412. Nevertheless, when an anonymous tip predicts a person's future actions ordinarily not easily predicted, so as to demonstrate "inside information—a specific familiarity with [the person's] affairs[,]" police corroboration of the prediction itself can support a finding of reasonable suspicion. *White,* 496 U.S. at 332, 110 S.Ct. 2412.

¶ 7 In *White,* local police received an anonymous telephonic tip that a woman would be leaving a certain apartment at a certain time in a brown Plymouth station wagon and would drive to an identified nearby motel to deliver about an ounce of cocaine stored in a brown attaché case. The officers staked out the apartment complex and observed the woman leave the apartment empty-handed and enter her station wagon. They followed the wagon along a four mile route which represented the most direct way to the motel where the drug transaction was predicted to take place. Before the woman indicated an intention to turn into the motel parking lot, officers activated their patrol car lights and pulled her wagon over. An officer informed the woman that she was suspected of transporting cocaine and asked for her permission to search her attaché case. She consented, and officers found marijuana inside the case and placed her under

applies under both constitutional grounds. *See Commonwealth v. Melendez,* 544 Pa. 323, 327–28, 676 A.2d 226, 230 (1996).

arrest. During processing at the police station, 3 milligrams of cocaine were found in the woman's purse.

¶ 8 Her pretrial motion to suppress denied, the woman pled guilty to possession and was sentenced. The intermediary state court of Alabama reversed the suppression ruling, holding that officers did not have reasonable suspicion under *Terry, supra,* to justify the investigatory stop of the woman's car. After the Alabama Supreme Court denied the state's petition for writ of certiorari, the United States Supreme Court granted certiorari and reversed and remanded.

¶ 9 Dispositive, in the Court's opinion, was that "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *White,* 496 U.S. at 332, 110 S.Ct. 2412 (quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). While anyone could have predicted that a car matching the woman's car would be at the apartment complex during and immediately after the time of the tip, the Court reasoned,

> the general public would have no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. *See Gates, supra,* at 245, 103 S.Ct. 2317. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well

informed, at least well enough to justify the stop.

*White,* 496 U.S. at 332, 110 S.Ct. 2412.

¶ 10 *White* clarifies, however, that not all predictive information is equal. An anonymous tip that predicts nothing more than one's adherence to an apparently normal, public routine, or one's action that would naturally or ordinarily follow the sequence of events already transpired at the time of the tip, does not provide sufficient "insider information" to permit authorities to rely on the tip's allegation of illegal activity. Indeed, Pennsylvania Supreme Court decisions in *Commonwealth v. Goodwin,* 561 Pa. 346, 750 A.2d 795 (2000) and *Wimbush, supra,* acknowledge that this subordinate brand of predictive information fails to create the reasonable suspicion necessary to support a *Terry* investigation.

¶ 11 In *Goodwin,* the Court rejected that reasonable suspicion derived from an anonymous tip that a suspect dealt drugs from her legitimate place of employment where the tip predicted nothing more than her normal workday routine:

> Unlike the tip in *Alabama v. White,* however, the tip in the instant matter did not predict behavior that showed a familiarity with Goodwin's personal affairs. Anyone in Goodwin's office building could have known what she was wearing that day, which kind of car she drove and where she parked it, and that she went to lunch around noon. The intimate knowledge found in *Alabama v. White* is simply not present here.

*Goodwin,* 561 Pa. at 355, 750 A.2d at 799.

¶ 12 Likewise held insufficient were the anonymous tips in two consolidated cases decided in *Wimbush.* One case involved a tip that provided a detailed physical description of a man allegedly selling drugs in a housing complex at the time of the tip. The tip predicted that the man would shortly exit the complex on girl's black

bicycle. Officers arrived on the scene and soon observed a man who matched the description ride away on a girl's black bicycle. An attempted stop caused the suspect to flee, and, when officers apprehended him, he dropped a large bag containing numerous baggies of crack cocaine.

¶ 13 The other case involved a tip that a described man by the name of Tony, currently in possession of marijuana and cocaine, would be driving a white van on Piney Ridge Road. After connecting the supplied van's tag number and registration to a Tony Wimbush, a reputed drug dealer, police went to Piney Ridge Road and saw the suspect's van parked at a roadside trailer. When the van eventually pulled out, police stopped it and saw two baggies of marijuana and cocaine in plain view on the van floor.

¶ 14 In each case, the Court in *Wimbush* concluded that more significant predictive information was needed to make the tip's allegation of illegal conduct reliable enough to create reasonable suspicion of criminality. A tip that a man who had arrived at the complex on a particular bicycle would leave on that same bicycle predicted nothing more than an expected, natural sequence of events, and thus demonstrated no insider information. Likewise too easily predicted was the fact that a man who had already driven his van to a Piney Ridge Road trailer would depart in his van and use the same road. In neither case could authorities infer from their corroboration of the tip that the tipster was well enough informed about the suspect's private criminal enterprise to justify a stop.

¶ 15 In contrast to the tips in *Goodwin* and *Wimbush*, the anonymous tip here did not make an obvious or natural prediction based on a set of facts already in place and easily observed by the public. Rather, as in *White*, the predicted occurrence was but one of any number of occurrences possible given the variables involved in the information related through the tip.

¶ 16 The tip in question predicted that a particular car presently in route from New York and transporting three identified occupants and a shipment of drugs would make its drop-off at a particular Edwardsville apartment in the late afternoon or evening. With three actors involved in the alleged illegal enterprise and the passage of many hours between the time of the tip and the return of the car, the drop-off could have occurred in any number of locations and at any time. It occurred, however, precisely where, when, and how the tip said it would occur: all three occupants were still aboard upon arrival; they came to Appellant's girlfriend's apartment rather than to the driver's home, the second passenger's home, or any other residence or location in the area; and they arrived in the latter part of the day just as the tip said they would.

¶ 17 Though the trio's alleged New York point of departure was never corroborated, neither was it contradicted so as to detract from the tipster's basis of knowledge, as the timing of the their Edwardsville arrival was not inconsistent with the tip's allegation of itinerary. Sufficient here was that full corroboration of all remaining predictions contained in the highly detailed tip demonstrated the tipster's familiarity with an illegal itinerary not easily foreseen.

¶ 18 Therefore, under the totality of the circumstances, the anonymous tip as corroborated supplied sufficiently significant insider information about future events to transform it from an unreliable source of information to a reliable source justifying an investigatory stop of Appellant and his co-passengers. Accordingly, we discern no error in the denial of Appellant's suppres-

sion motion, and affirm judgment of sentence.

¶ 19 Judgment of sentence is affirmed.