**In re J.N.Y., A Minor,**

**Appeal of J.N.Y., A Minor, Appellant.**

Superior Court of Pennsylvania.

Submitted April 9, 2007.

Filed July 31, 2007.

Patrick T. Klena, Bellefonte, for appellant.

Karen E. Kuebler, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., TODD, and COLVILLE *, JJ.

OPINION BY TODD, J.:

¶ 1 J.N.Y. appeals the October 12, 2006 order of the Centre County Court of Common Pleas adjudicating her delinquent based on possession of drug paraphernalia[1] and placing her on probation under the supervision of the Centre County Juvenile Probation Department. We are constrained to reverse.

¶ 2 At Appellant's adjudication hearing, the Commonwealth presented the testimony of Jennifer Brown, vice principal and former teacher at Bellefonte Area High School, where Appellant was a student. Brown testified that on January 3, 2005, when she was a teacher at the school, she received information that Appellant was in possession of two marijuana pipes. Although Brown testified that she received the information from "multiple sources," including a "couple kids" and a "couple teachers", Brown could not recall any specific names. (N.T. Hearing, 9/26/06, at 7.) Based on the information, Brown went to look for Appellant, who had apparently left Brown's classroom during the class period and "went missing." (*Id.* at 16.) Brown then reported the information to Terry Bandel, who at that time was the school's vice principal.

¶ 3 Bandel testified that he recalled speaking with Brown near the end of the day regarding the information Brown had concerning Appellant, and that shortly thereafter he went outside for bus duty. While outside, he saw Appellant on the loading dock waiting for her bus. Bandel testified that there was nothing unusual about Appellant's appearance or speech at the time. Bandel took Appellant back to his office and asked her to empty her purse. At first Appellant refused, but when Bandel told Appellant that if she did not empty her purse he would have to call the police, she complied. Appellant's purse was found to contain two marijuana pipes. The police were called, and Appellant was read her Miranda rights, after

---

* Retired Senior Judge assigned to the Superior Court.

1. 35 P.S. § 780–113(a)(32).

which she admitted to possessing the pipes.[2]

¶ 4 Appellant filed a motion to suppress the evidence on the basis that the search and seizure of Appellant and her purse were illegal because Bandel did not have the requisite reasonable suspicion to conduct the same. Following a hearing on September 26, 2006, the juvenile court denied the motion and determined that Appellant committed the offense of possession of drug paraphernalia. On October 12, 2006, Appellant appeared for a disposition hearing, at which Appellant renewed her motion to suppress. The juvenile court again denied the suppression motion and adjudicated Appellant delinquent. Appellant was placed on probation as noted above, and ordered to pay certain costs, as well as complete 30 hours of community service. This appeal followed, wherein Appellant argues that the juvenile court erred in denying her motion to suppress because the search and seizure of her purse was illegal under the Fourth Amendment of the United States Constitution, and Article 1, Section 8 of the Pennsylvania Constitution.

¶ 5 In reviewing the ruling of a suppression court, this Court

must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous.

Commonwealth v. Slonaker, 795 A.2d 397, 400 (Pa.Super.2002) (citation omitted).

¶ 6 The United States Supreme Court has held that the right to be free from unreasonable searches and seizures under the Fourth Amendment applies to searches of students conducted by public school officials. New Jersey v. T.L.O., 469 U.S. 325, 333, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). In recognizing that a balance must be struck "between the schoolchild's legitimate expectations of privacy and the school's equally legitimate need to maintain an environment in which learning can take place," id. at 340, 105 S.Ct. 733, the Court explained:

the accommodation of the privacy interest of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.

Id. at 341, 105 S.Ct. 733. The Court further instructed:

Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception,"; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place[.]" Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting

2. Following the filing of a Petition to Withdraw Uncounseled Admission to Alleged Delinquent Act, the juvenile court, by order dated September 26, 2006, allowed Appellant to withdraw her uncounseled admission to possession of the marijuana pipes.

that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 341–42, 105 S.Ct. 733 (footnotes and citations omitted).

¶ 7 Our Supreme Court has equated the "reasonable grounds" referred to in *T.L.O.* with reasonable suspicion, stating, in *Commonwealth v. Cass,* 551 Pa. 25, 709 A.2d 350 (1998), "*T.L.O.* established the principle that the constitutionality of school searches would be determined upon a finding of reasonable suspicion rather than the stricter legal requirement of probable cause." *Id.* at 353–54. Furthermore, the same reasonable suspicion standard used in determining the propriety of a search and seizure under the Fourth Amendment also is applicable to an analysis under Article 1, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. J.B.,* 719 A.2d 1058, 1066 (Pa.Super.1998) (holding that "individualized searches of public school students conducted by school officials, including school police officers, are subject to a reasonable suspicion standard under article one, section eight of the Pennsylvania Constitution").

¶ 8 In *T.L.O.,* the United States Supreme Court held that the search of a student's purse was reasonable where a teacher had reported seeing the student smoking in the bathroom in violation of school rules, and the student subsequently denied having done so. By contrast, we cannot conclude that the search and seizure of Appellant's purse in the instant

case was supported by the requisite reasonable suspicion.

¶ 9 In *Commonwealth v. Goodwin,* 561 Pa. 346, 750 A.2d 795 (2000), our Supreme Court held that evidence seized as a result of an investigatory stop of the appellant's car should have been suppressed where police stopped the car based on an uncorroborated anonymous tip alleging that the appellant was selling marijuana. The Court explained that, given the unreliability of the anonymous tip alone, the police needed "something more" to justify conducting an investigatory stop of the appellant. *Id.* at 354, 750 A.2d at 799. In that the police observed no unusual activity while they watched the appellant after having received the anonymous tip, and thus had no reason independent of the tip to suspect that criminal activity was afoot, the allegations of the tipster remained uncorroborated, and were insufficient to provide the reasonable suspicion necessary for an investigatory stop.

¶ 10 In the instant case, Vice Principal Bandel testified that he asked Appellant to accompany him from the loading dock to the school office based on information he received from Brown that Appellant "had something inappropriate on her." (N.T. Hearing, 9/26/06, at 26.) Bandel, however, testified that he had no idea where Brown had received the information she provided to him. (*Id.* at 29.) Indeed, Brown herself testified that she could not recall the names of the individuals from whom she received the information. (*Id.* at 7.) Furthermore, Bandel testified that there was nothing unusual about Appellant's appearance or speech at any time. (*Id.* at 30.) Thus, as did the Court in *Goodwin,* we hold that the effectively anonymous tips alleging that Appellant was in possession of two marijuana pipes, without more, did not provide sufficient reasonable suspicion

to conduct a search and seizure of Appellant's purse.[3]

¶ 11 For these reasons, we hold the juvenile court erred in denying Appellant's motion to suppress on the grounds that the search and seizure of the contents of her purse was illegal. Accordingly, we reverse the juvenile court's order adjudicating Appellant delinquent and placing her on probation.

¶ 12 Order **REVERSED.**

¶ 13 Colville, J. files a Dissenting Opinion.

DISSENTING OPINION BY COLVILLE, J.:

¶ 1 I would affirm the trial court's order adjudicating Appellant delinquent based upon that court's Pa.R.A.P.1925(a) opinion. I, therefore, dissent.

¶ 2 I do not believe that the tips received by the school regarding Appellant's possession of marijuana pipes amounted to "effectively anonymous tips" which "without more, did not provide sufficient reasonable suspicion to conduct a search and seizure of Appellant's purse." *See* Majority Opinion at 688–89. In my view, *Commonwealth v. Goodwin*, 561 Pa. 346, 750 A.2d 795 (2000), the case relied upon by

the Majority in reversing the trial court, is distinguishable from this matter.

¶ 3 In *Goodwin*, a plurality of our Supreme Court determined that a single uncorroborated anonymous tip alleging that Goodwin sold drugs did not create the requisite reasonable suspicion to stop Goodwin for the purpose of investigation.[4] Here, the school received tips regarding Appellant's possession of drug paraphernalia from "multiple sources," which included students and teachers. *See N.T.*, 9/26/06, at 7. As such, it cannot be said that the tip or tips were uncorroborated. Moreover, I would not characterize the tips received by the school as anonymous, as that term is utilized in *Goodwin*.

¶ 4 In *Goodwin*, the police never knew who called them regarding Goodwin's alleged drug dealing. In contrast, Ms. Brown, the teacher who received the tips in this case, knew the teachers and students who informed her of the pipes in Appellant's purse; by the time of Appellant's hearing, Ms. Brown simply could not remember exactly which teachers and students provided her with this information. As the trial court related:

> ... [T]he testimony of [Ms. Brown], while she can't remember who these people were [who gave her the tips], it

**3.** We recognize that this Court previously held, in *In Re D.E.M.*, 727 A.2d 570 (Pa.Super.1999), that the detention and questioning of a student based on a rumor that he was in possession of a gun on school grounds was reasonable under *T.L.O.*, based on the state's interest "in maintaining a safe and educational environment on school grounds." *Id.* at 576. *In re D.E.M.* is not controlling herein, however, as the instant case involved a search of Appellant's purse, and not merely a detention. Moreover, in contrast to *In re D.E.M.*, the unsubstantiated information possessed by Vice Principal Bandel, according to his own testimony, indicated only that Appellant was in possession of "something inappropriate." Thus, there was no issue of the safety and

personal security of the student body as there was in *In re D.E.M.*

**4.** At the time *Goodwin* was decided, our Supreme Court only consisted of six justices. The lead opinion in *Goodwin* was authored by Justice Nigro and joined by (then) Justice Cappy. (Then) Justice Zappala authored a concurring opinion in which he disagreed with the lead opinion's analysis under the Fourth Amendment but nonetheless believed the stop of Goodwin was unconstitutional under Article I, Section 8 of the Pennsylvania Constitution. (Then) Chief Justice Flaherty joined Justice Zappala's concurring opinion. Justice Castille filed a dissenting opinion, which Justice Newman joined.

was not that they were unknown people to her, but that she just can't remember today who they were[.]

N.T., 9/26/06, at 33.

¶ 5 In short, I agree with the trial court that the school had the requisite reasonable suspicion to search Appellant. Accordingly, I would affirm the trial court's order adjudicating Appellant as delinquent.