750 A.2d 807

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Anthony C. WIMBUSH, Appellant.**

**Commonwealth of Pennsylvania, Appellee,**

v.

**Lance M. White, Sr., Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1997.

Resubmitted July 14, 1999.

Decided April 17, 2000.

Reargument Denied Aug. 28, 2000.

5.  Of course, the United States Supreme Court can once again correct the mistake the majority makes today regarding the scope of the Fourth Amendment.  *See, Pennsylvania v. Labron,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(reversal by U.S. Supreme Court on Fourth Amendment issue); *Pennsylvania v. Kilgore,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(same); *Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988)(same); *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)(same).

372

Thomas. M. Dickey, Altoona, for Anthony C. Wimbush.

Robert B. Stewart, III, Huntingdon, for Com. in 174 M.D. 1996.

Gregory L. Cecchetti, Greensburg, for Lance M. White, Sr.

John W. Peck and Leslie J. Uncapher, Greensburg, for Com. in 25 W.D. 1997.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

■ In this consolidated appeal, we granted allocatur to determine whether an anonymous tip and other purported corroborating evidence created a reasonable suspicion that criminal activity was afoot and therefore, provided a basis for police officers to stop Appellants for investigation. Since we conclude that the officers in each case could not have reasonably suspected that criminal activity was afoot at the time of their investigatory stops, we reverse the Superior Court's decisions that affirmed the suppression courts' denial of Appellants' motions to suppress. The relevant facts of each case are set forth briefly below.[1]

1. When reviewing the ruling of a suppression court, we are bound by the suppression court's factual findings that are supported by the record. *Commonwealth v. DeWitt*, 530 Pa. 299, 302, 608 A.2d 1030, 1031 (1992).

*Commonwealth v. Wimbush*

On February 13, 1993, a Pennsylvania State Police Trooper received an anonymous call at the police barracks during his 3:00 p.m. to 11:00 a.m. shift. The anonymous caller stated that a black man named Tony would be driving a white van on Piney Ridge Road and that Tony would have cocaine and marijuana in his possession. The anonymous caller gave the officer the van's license plate number. The state police checked the number and learned that the van was registered to Appellant Anthony Wimbush. After also learning where Wimbush lived, they called the police in his area to notify them and found out that Wimbush was suspected of drug activity in his county.

Several officers went in separate vehicles to Piney Ridge Road and one officer saw the white van parked at a trailer. An officer watched the van and the others took positions on other parts of the road. When the van left the trailer, the observing officer contacted the others by radio. These officers followed the van and stopped it at an intersection. Another officer approached the passenger side and when he saw Wimbush reach between the bucket seats, he shined his flashlight on the van floor. The officer saw two baggies, one appearing to contain marijuana and the other containing a white powdery substance.

The officer opened the door and seized the baggies. He directed Wimbush to get out of the van and gave him his Miranda rights. Another officer took Wimbush back to the barracks where Wimbush signed a consent form authorizing a search of the van. The officers found more drugs in the van.

Wimbush was charged with possession of cocaine and marijuana and possession of cocaine and marijuana with intent to deliver. After a hearing, the trial court denied Wimbush's motion to suppress the alleged illegally-seized evidence. The case proceeded to a bench trial and the trial court found Wimbush guilty of the crimes charged. The court sentenced Wimbush to five to ten years in prison. On appeal, the

Superior Court affirmed, finding that the trial court properly denied the motion to suppress.

## Commonwealth v. White

On the morning of July 12, 1994, Officer Traci Matthews of the New Kensington Police Department responded to an anonymous 911 call about possible drug activity at the King's Residence of the New Kensington public housing complex. The anonymous caller asserted that a black male, wearing a white shirt and white shorts, would exit the complex with drugs in his possession and get onto a girl's black bicycle.

Officer Matthews drove to King's Residence and saw a girl's black bicycle outside the entrance to the complex. She circled the premises and returned to observe Appellant Lance White, a black male dressed in a primarily white T-shirt and white shorts, exit the complex and get onto a girl's black bicycle. Once White reached the street, Officer Matthews stopped him, questioned him briefly about the anonymous call, and began to pat him down for weapons. The officer testified that White appeared nervous during this detention and that before she could finish her pat-down search, he ran from her. Shortly thereafter, Sergeant Floyd Newingham saw White, ordered him to stop and directed him to walk towards him. As White approached Sergeant Newingham, he dropped a bag containing sixteen individually-wrapped bags of crack cocaine. Sergeant Newingham placed White under arrest.

Challenging the legality of Officer Matthew's initial stop, White filed a motion to suppress the drug evidence. The trial court denied the motion and following a bench trial, found White guilty of possession of a controlled substance, possession with intent to deliver a controlled substance, and escape. The court sentenced White to a term of imprisonment of three and one-half to ten years. On appeal, the Superior Court affirmed White's judgment of sentence.

## Discussion

The issue presented by both of these cases is the validity of the police officer's investigatory stop. Appellants argue that

the investigatory detention they were subjected to was unconstitutional since the anonymous tip and other purported corroborating evidence did not create a reasonable suspicion that they were engaged in criminal activity.[2] We agree.

An investigatory stop, which subjects a suspect to a stop and a period of detention but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226, 228–30 (1996). Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability. *Commonwealth v. Wilson*, 424 Pa.Super. 110, 115, 622 A.2d 293, 295–96 (1993) (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990)). Thus, quantity and quality of information are considered when assessing the totality of the circumstances. *Id.* If information has a low degree of reliability, then more information is required to establish reasonable suspicion. *Id.*

This Court has recently addressed the role of anonymous tips in providing a basis for an investigatory stop. In *Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997), a police officer responded to a radio report stating that a man in a green jacket was carrying a gun at a particular location. No additional details were provided. When the officer arrived at the identified location, he saw a number of people including the defendant who was wearing a green jacket. Based solely upon the anonymous call, the officer stopped and searched the defendant.

2. Although neither Appellant explicitly raises this claim under Article I, Section 8 of the Pennsylvania Constitution, both Appellants reference Pennsylvania cases throughout their argument that their constitutional rights were violated. We note that Pennsylvania has consistently followed Fourth Amendment jurisprudence in stop and frisk cases. *See, e.g., Commonwealth v. Jackson*, 548 Pa. 484, 489, 698 A.2d 571, 574 (1997); *see also Commonwealth v. Melendez*, 544 Pa. 323, 327–28, 676 A.2d 226, 230 (1996) (*Terry* sets forth standard for the reasonableness of a search under Article I, Section 8 of the Pennsylvania Constitution).

■ Relying upon *Commonwealth v. Hawkins*, 547 Pa. 652, 692 A.2d 1068 (1997), a factually similar case [3], the Court held in *Jackson* that the anonymous tip did not justify a stop and frisk of the defendant. *Jackson*, at 494, 698 A.2d at 576. In *Hawkins*, a plurality of the Court explained that when police receive an anonymous call alleging that a person of a particular description is carrying a gun at a particular location, and the police broadcast that information to patrol cars, neither the dispatcher nor the officers in their cars know whether the information is reliable. *Hawkins*, 547 Pa. at 656, 692 A.2d at 1070. The Court observed that an anonymous tip may be nothing more than a mere prank call. *Id.* At the same time, it may be based on no more than the caller's unparticularized hunch. *Jackson*, 548 Pa. at 490, 698 A.2d at 574; *see also White*, 496 U.S. at 329, 110 S.Ct. at 2415 (anonymous tips provide "virtually nothing from which one might conclude that the caller is either honest, or his information reliable"). Because of its unreliability, an anonymous radio call alone is insufficient to establish a reasonable suspicion of criminal activity. *Jackson, supra; Hawkins, supra.*

The Court in *Jackson* further explained that the fact that the police proceeded to the designated location and saw a person matching the description in the call did not corroborate any alleged criminal activity. *Jackson*, 548 Pa. at 492, 698 A.2d at 574–75 (quoting *Hawkins*, 547 Pa. at 656–57, 692 A.2d at 1070). Since anyone can describe a person who is standing in a particular location, "[s]omething more is needed to corroborate the caller's allegations of criminal conduct." *Id.* In the typical anonymous caller situation, the police will need an independent basis to establish reasonable suspicion. *Id.*

■ As explained in *Hawkins*, where the police are acting on information supplied anonymously, the public will receive its full measure of protection by police who act within constitu-

3.  In *Hawkins*, a police officer also responded to a radio call stating that there was a man with a gun at a particular location. The radio call included a description of the suspect. When the officer arrived at the location, he saw the defendant who fit the description in the call. Based upon the anonymous call, the officer stopped and frisked the defendant.

tional restraints. *Hawkins,* 547 Pa. at 657–58, 692 A.2d at 1071. When the police receive unverified information that a person is engaged in illegal activity, the police may observe the suspect and conduct an investigation. If police surveillance produces a reasonable suspicion of criminal conduct, the suspect may be stopped and questioned. *Id.*

Since the police in *Jackson* and *Hawkins* acted on anonymous tips and had no independent reason to believe that the suspects may have been involved in criminal activity, the Court reversed the judgments of sentence. *See also Commonwealth v. Kue,* 547 Pa. 668, 692 A.2d 1076 (1997) (opinion announcing the judgment of the Court) (where, other than anonymous tip, there was no reason to believe that criminal conduct was afoot, an officer's stop was unsupported by reasonable suspicion).

■ Applying the rationale in *Jackson* and *Hawkins* to the cases before the Court, the lower courts' decisions cannot stand. In *Commonwealth v. White,* Officer Matthews proceeded to King's Residence in response to an anonymous tip alleging that White was carrying drugs. As stated above, the anonymous tip alone, given its unreliability, could not create a reasonable suspicion that criminal activity was afoot. Therefore, Officer Matthews needed "something more" than just the anonymous tip in order to conduct a valid investigatory stop of White.

There was, however, no corroboration of the tipster's allegations of criminal conduct to justify Officer Matthew's stop. While White's appearance was consistent with the anonymous caller's overly general description and White did exit the housing complex on the described bicycle, Officer Matthews observed no unusual conduct which would suggest that criminal activity was afoot. As such, Officer Matthew's surveillance produced no reason independent of the unreliable, anonymous tip to suspect that White was involved in criminal conduct. Rather, the only basis for Officer Matthew's belief that a crime had been committed remained the information obtained from the uncorroborated tip that bore no indicia of reliability.

Under *Jackson*, this basis is simply not adequate to establish the reasonable suspicion required to conduct an investigatory stop.

■ The Commonwealth argues, however, that the anonymous tip given in the instant case was similar to the one supplied to police in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), which held that police corroboration of an anonymous tip that predicted a person's future actions justified an investigatory stop.[4] The anonymous tipster in *Alabama v. White* told police that the defendant would leave her apartment at a particular time, would travel to an identified motel and that she would have drugs inside a particular carrying case. The police stopped the defendant's car just short of the identified motel. In upholding the stop, the United States Supreme Court found that the tipster's information demonstrated "inside information—a specific familiarity with respondent's affairs." *White*, 496 U.S. at 332, 110 S.Ct. at 2417. The Court then held that if an anonymous tip provides such insider information, including facts relating to "future actions of third persons ordinarily not easily predicted," then police corroboration of this insider information can support a finding of reasonable suspicion. *Id.* However, unlike the tip in *Alabama v. White*, the anonymous tip here did not predict behavior that revealed an intimate familiarity with White's affairs. Rather, the only predictive flavor to the instant tip was a lone statement that a generically-described person would exit a complex and get on a black bicycle. Not only did the anonymous tipster fail to provide any information about White's destination, but anyone in the King's Residence complex could have been aware of White's outfit and mode of

4. The United States Supreme Court recently reaffirmed the requirement that anonymous tips must contain predictive information in order to give the police reasonable suspicion in *Florida v. J.L.*, —— U.S. ——, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The Court explained that in order for an anonymous tip to have sufficient indicia of reliability the tip must exhibit predictive information that can be corroborated by police officers. *Id.* at —— ——, 120 S.Ct. at 1378–79. In the absence of such predictive information, the anonymous tip leaves the police without any means to test the informant's knowledge and thus, cannot provide the officers with reasonable suspicion. *Id.*

transportation on the day in question. The tip here simply does not demonstrate the kind of insider information that was found to be pivotal to the Court's holding in *Alabama v. White.*

■ Thus, we find that the unreliable and uncorroborated anonymous tip did not provide Officer Matthews with the reasonable suspicion required to make an investigatory stop of White.[5]

■ Likewise, we find that the stop in *Commonwealth v. Wimbush* was not conducted on the basis of a reasonable suspicion that criminal activity was afoot. In *Wimbush,* police proceeded to Piney Ridge Road in response to an anonymous call claiming that someone named Tony would be driving a van which contained drugs. As *Jackson* and *Hawkins* make clear, an anonymous tip alone, given its unreliability, cannot form the basis for a reasonable suspicion that criminal activity is afoot. Thus, the police needed "something more" than just the anonymous tip to justify conducting an investigatory stop of Wimbush.

The anonymous tip, however, was uncorroborated. The fact that the state police learned from local authorities that Wimbush was suspected of drug activity in his county did not corroborate that he was currently engaged in drug-related

**5.** The additional fact that the drugs were not recovered during Officer Matthew's initial detention but were discarded and recovered after White's flight in response to Officer Matthew's illegal detention does not alter our finding that the drugs must be suppressed as the fruit of an illegal stop. In *Commonwealth v. Matos,* this Court held that where an individual is unconstitutionally seized by the police, i.e. without reasonable suspicion or probable cause, any subsequent flight with police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual. *Matos,* 543 Pa. 449, 672 A.2d 769 (1996). In the instant case, the Commonwealth argues that *Matos* does not preclude the pursuit of an individual who flees after he has been stopped by a police officer who possesses reasonable suspicion that criminal activity is afoot. However, since we find that Officer Matthews did not have the requisite reasonable suspicion to justify an investigatory stop of White, the drugs discarded by White were the fruit of a seizure which was unconstitutional from the outset, and the Commonwealth's argument necessarily fails.

activity. The police saw no suspicious activity after it located the van and had no reason independent of the tip to believe that criminal activity was afoot. Under *Jackson*, the uncorroborated anonymous tip was insufficient to create a reasonable suspicion of criminal activity and did not justify the investigatory stop.

Although the Commonwealth makes no argument to this effect, we note that *Alabama v. White* is also distinguishable from the instant case, as it was in *Commonwealth v. White*. As discussed in the above analysis of *Commonwealth v. White*, the Court in *Alabama v. White* held that police were justified in conducting an investigatory stop when they were able to corroborate an anonymous tipster's information that demonstrated a specific familiarity with the defendant's affairs, including predictions relating to "future actions of third persons ordinarily not easily predicted." *White*, 496 U.S. at 332, 110 S.Ct. at 2417. The *White* Court made clear that it was the police corroboration of the predictive aspects of the tip, and not the corroboration of facts existing at the time of the call, which provided police with the reasonable suspicion necessary to justify the stop. Here, however, the anonymous tip did not provide any predictive information, which would imply that the anonymous caller had a special familiarity with Wimbush's affairs. Rather, the record establishes that immediately following the receipt of the anonymous tip, the police proceeded to Piney Ridge Road, where they discovered Wimbush's parked van. Thus, Wimbush was already on Piney Ridge Road at the time police spotted his van. Shortly thereafter, Wimbush's van proceeded northerly on Piney Ridge Road and the police followed.[6] Since the anonymous tip

6. The dissenting opinions imply that the facts in *Wimbush* are almost identical to those in *Alabama v. White*. Particularly, in his dissent, Mr. Justice Castille relies on the fact that "the caller predicted that [Wimbush's] vehicle would be proceeding along Piney Ridge Road, a limited access road in Huntingdon County, later that evening," in reaching the conclusion that the police corroborated the predictive aspects of the anonymous tip. Dissenting opinion at 819. This statement conveys a predictive aspect to this tip that is unsupported by the record, since Wimbush was on Piney Ridge Road at the time the police observed his parked van and nothing in the tip itself indicated that Wimbush was

in the instant case did not provide the type of "inside information" contained in the tip in *Alabama v. White*, the police did not have reasonable suspicion under *White* to stop Wimbush.

The Commonwealth contends, however, that although no traffic citation was issued to Wimbush, the police legally stopped the van because of a traffic violation. In rejecting this argument below, the trial court stated that a traffic violation was just a theory advanced to support the stop and that, in actuality, the van was stopped because of suspicion arising from the anonymous tip. We are bound by the court's credibility determination. *See also Commonwealth v. DeWitt*, 530 Pa. 299, 608 A.2d 1030 (1992) (finding theories advanced related to a traffic violation to be after-the-fact justifications, rather than valid reasons for a stop).[7]

For the reasons outlined above, we reverse the Superior Court's decisions that affirmed the trial court's denials of

anywhere other than Piney Ridge Road. In addition, the fact that Wimbush started driving along Piney Ridge Road after police had put his van under surveillance does not impart reliability to the anonymous tip, since any other driver would presumably have to drive along Piney Ridge Road in order to exit the road. Nothing in the record dispels this presumption.

The facts of this case are clearly not as predictive of future behavior as the facts presented in *Alabama v. White*. In White, the police were able to corroborate the predictions regarding White's future behavior, rather than merely verifying facts in existence at the time of the tip. And, even with this corroboration of future activity, the Court stated that White was a close case. Accord *Florida v. J.L.*, —— U.S. ——, ——, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000). The facts and circumstances surrounding the anonymous tip in the instant case do not support a determination of reasonable suspicion since the tip here failed to provide the same level of predictive information as the anonymous tip in *White*.

7. The Commonwealth also states that Wimbush's voluntary consent to a search of the van provides an independent basis to sustain the search. The Commonwealth has the burden of establishing that the evidence found in a later search was not an exploitation of the illegal search. See *Commonwealth v. Yocham*, 473 Pa. 445, 375 A.2d 325 (1977) (discussing test for admissibility of evidence found after an illegal arrest); *Commonwealth v. Brooks*, 468 Pa. 547, 364 A.2d 652 (1976) (same). The Commonwealth has failed to support this contention and its bare statement is insufficient to meet its burden of showing that the connection between the illegal stop and the subsequent search was so attenuated as to dissipate the taint. *See id.*

Appellants' motions to suppress and remand for further proceedings consistent with this opinion.

Chief Justice FLAHERTY filed a concurring opinion.

Justice ZAPPALA filed a dissenting opinion.

Justice CASTILLE filed a dissenting opinion in which Justice NEWMAN joins.

FLAHERTY, Chief Justice, concurring.

I join the majority but write separately to respond to the dissenting view that the issues of Pennsylvania constitutional law were not properly raised.

In *Wimbush* and *Commonwealth v. White* there is a question as to whether appellants raise claims under the Pennsylvania Constitution. Pa.R.A.P. 910(a)(5) states:

The statement of questions presented will be deemed to include every subsidiary question fairly comprised therein. Only the questions set forth in the statement, or fairly comprised therein will ordinarily be considered by the Court.

Wimbush asserts in the statement of questions presented section of his brief that the stop of Wimbush's vehicle was "unconstitutional" and White asserts that his "constitutional rights" were violated. Both briefs then go on to cite Pennsylvania cases in making the argument that constitutional rights were violated. White even refers to Pennsylvania's "strong right of privacy," asserting that Pennsylvania's view of privacy is applicable to his case.

It would be understatement to say that the statement of questions presented in the briefs of Wimbush and White are inartfully drafted. If an appellant wishes to raise a question under the Pennsylvania Constitution, this court should not have to guess at what is being raised. Although it is a close case as to whether Pennsylvania claims have in fact been raised, I would conclude, with some hesitancy, that they have. The applicable law, therefore, is our decisions in *Jackson* and *Hawkins*.

In both *Wimbush* and *White* the Commonwealth relies on the predictive nature of the anonymous calls. In *Hawkins,* a plurality of this court stated: "if the tip is anonymous, police may reasonably rely on it if it is predictive of the suspect's behavior." 547 Pa. 652, 692 A.2d 1068, 1070 n. 3. The anonymous caller in *Wimbush* indicated that a black man would be driving a white van with a specified registration number on Piney Ridge Road and would have drugs in his possession. The fact that police discovered this particular van on Piney Ridge Road being driven by a black man is predictive of nothing since the van was there from the beginning of police surveillance.

However, the Commonwealth asserts that the stop was permissible under Pennsylvania law because the arresting police called police in the area where Wimbush lived and were told that he was a suspect in drug activity. This, according to the Commonwealth, is independent corroboration of the anonymous tip. I cannot agree that such information validates the stop for two reasons. First, the anonymous tip provided no information except that the van and driver were located at a particular location. Since the van was already on Piney Ridge Road when police arrived, separate information as to suspected drug activity gives the police nothing except that the driver is a suspected drug dealer. Secondly, the call from one police department to the other was made after the stop had been ordered. Information validating the stop which arrives after the stop had been already decided upon cannot serve to justify the stop.

In *White* the anonymous caller stated that a black male wearing a white shirt and shorts would leave a public housing complex and get on a girl's bike. This person would allegedly have drugs. However, the fact that a black male clad in white left the housing project on a bike is so general in nature that it cannot be said to be predictive. Without more, police had no reasonable suspicion that this person was engaged in illegal conduct.

Accordingly, I join the majority in reversing both convictions.

ZAPPALA, Justice, dissenting.

As I find that the information given by the anonymous callers and the subsequent police corroboration demonstrate a similar degree of reliability as that found to constitute reasonable suspicion to support an investigatory stop under the Fourth Amendment in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), I am compelled to dissent. Had Appellants properly preserved claims under Article I, Section 8, of the Pennsylvania Constitution, I would have reached a contrary conclusion. *See Commonwealth v. Goodwin*, No. 37 W.D. Appeal Docket 1997, (Zappala, J., Concurring).[1]

The majority properly notes that "the Court in *Alabama v. White* held that police were justified in conducting an investigatory stop when they were able to corroborate an anonymous tipster's information that demonstrated a specific familiarity with the defendant's affairs, including predictions relating to 'future actions of third persons not easily predicted.' " Op. at 813, citing *Alabama v. White*, 496 U.S. at 332, 110 S.Ct. at 2417. Although this general proposition is sound, the United States Supreme Court's application of this rule of law to the facts in *Alabama v. White* compels me to part company with the majority in these cases.

The anonymous caller in *Alabama v. White* stated that the suspect would be leaving a particular apartment complex at a certain time in a specified vehicle. The caller further informed the police that the suspect was going to a motel and that she would be in possession of an ounce of cocaine inside a brown attaché case. The officer observed the defendant exit the building, carrying nothing in her hands, and enter the designated car. The officers followed the vehicle as it drove the most direct route to the motel and stopped the car just

1. In my concurring opinion in *Goodwin*, I concluded that Article 1, Section 8 requires a broader standard than that applied by the United States Supreme Court in *Alabama v. White* in interpreting whether an anonymous tip is sufficient to establish reasonable suspicion to support an investigatory stop.

short of its destination. Marijuana was discovered in an attaché case and cocaine was found in the defendant's purse.

Acknowledging that it was a close case, the Court held that the anonymous tip coupled with the police corroboration established reasonable suspicion to support the investigatory stop.[2] It found that as the caller indicated, a woman left the apartment building, got into the designated vehicle at a certain time and proceeded on a direct route to the predicted destination. The Court held that the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller regarding the possession of drugs.

Although I question the Court's reasoning in this regard,[3] our Court is bound by it as there is no discernable difference between the facts of *Alabama v. White* and those of the instant cases.[4] In *Commonwealth v. Wimbush,* an anonymous caller stated that a black man named Tony would be driving a white van with a specified vehicle registration number on Piney Ridge Road and that Tony would have cocaine and

**2.** The Court noted that every detail of the tip had not been verified at the time of the stop, such as the name of the woman leaving the building, the precise apartment from which she left, and the suggestion that White would be carrying a brown attaché case.

**3.** Justice Stevens cogently noted in his dissenting opinion in *Alabama v. White* that one's "prediction about somebody's time of departure and probable destination is anything but a reliable basis for assuming that the commuter is in possession of an illegal substance." 496 U.S. at 333, 110 S.Ct. at 2417–2418. He further noted that under the Court's holding, "every citizen is subject to being seized and questioned by any officer who is prepared to testify that the warrantless top was based on an anonymous tip predicting whatever conduct the officer just observed." *Id.* at 333, 110 S.Ct. at 2418.

**4.** In reaching this conclusion, I have afforded the suppression court's finding of fact the deference described in *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In *Ornelas,* the United States Supreme Court held that the trial court's ultimate determination as to whether police officers had reasonable suspicion to stop an individual is subject to *de novo* review on appeal, rather than a deferential or abuse of discretion standard. The Court made clear, however, that reviewing courts "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 699, 116 S.Ct. at 1663.

marijuana in his possession. Upon a check of the registration number given, the officers learned that the van was registered to Anthony Wimbush. The officers also discovered that Wimbush was suspected of drug activity in his county. That evening, officers observed a white van parked at a trailer located on Piney Ridge Road. The officers followed the vehicle as it left the trailer and stopped Wimbush at an intersection. Drugs were recovered from the vehicle and Wimbush was arrested.

In *Commonwealth v. White,* an anonymous 911 caller stated that a black male, wearing a white shirt and white shorts, would exit the King's Residence of the New Kensington public housing complex with drugs in his possession and get onto a girl's black bicycle. An officer drove to King's Residence and observed a girl's black bicycle outside the entrance to the complex. Shortly thereafter, the officer saw White, a black male dressed in a primarily white T-shirt and white shorts, exit the complex and get onto the girl's bicycle. The officer stopped White, patted him down for weapons, and White fled. Another officer observed White and ordered him to stop and walk towards him. As White approached the officer, he dropped a bag containing sixteen individually wrapped bags of crack cocaine.

As in *Alabama v. White,* the anonymous callers in the instant cases informed the authorities of the identity of the defendant, where he would be located, approximately when the defendant would leave and the specific mode of transportation to his destination. Accordingly, I am compelled to conclude that *Alabama v. White* controls these cases and that no violation of the Fourth Amendment resulted from the investigatory stops of Appellants.

CASTILLE, Justice, dissenting.

As the majority acknowledges, stop-and-frisk cases in this Commonwealth are evaluated under the federal standard set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d

889 (1968).[1] Thus, I must respectfully dissent.[2] The corroboration of the anonymous tips in both of these cases was clearly sufficient under *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In *Alabama v. White,* a police officer received a telephone call from an anonymous person, stating that White would be leaving a specified apartment at a particular time in a brown Plymouth station wagon with a broken taillight, that she would be going to a specified motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case. After arriving outside the apartment building, the officer and his partner observed White leave the building, with nothing in her hands, and enter a station wagon similar to the one described. The officers followed the vehicle as it proceeded along the most direct route towards the specified motel, and stopped it before it reached the motel. After receiving permission to conduct a search, the officers found a brown attaché case. Upon request, White provided the combination to the lock. The officers found marijuana inside and placed White under arrest. A subsequent search revealed cocaine in her purse.

After White was tried and convicted of several possession charges, the Alabama Court of Criminal Appeals determined that the officers lacked the reasonable suspicion necessary under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to justify the initial investigatory stop of respondent's vehicle; therefore, the marijuana and cocaine were deemed

**1.** Even if the Pennsylvania Constitution afforded broader protection in stop-and-frisk cases than the United States Constitution, appellants in the case *sub judice* would not be entitled to that protection because they have not raised claims under the Pennsylvania Constitution. Although it is true, as Mr. Chief Justice Flaherty asserts in his Concurring Opinion, that both appellants cite Pennsylvania case law in their briefs, all of the cases relied upon by appellants for the issue presently before this Court are based on federal jurisprudence. Moreover, appellant White's passing reference to Pennsylvania's "strong right of privacy" arises in his discussion of discarded contraband, an issue that is not relevant to the dispositive question of the propriety of the initial investigatory stop in this matter.

**2.** For further elaboration on the subject matter of this opinion, see the Dissenting Opinion in *Commonwealth v. Goodwin,* 561 Pa. 346, 750 A.2d 795 (1999), a companion matter originally accepted under this Court's allocatur jurisprudence.

fruits of an unlawful detention. The Court of Criminal Appeals concluded that White's motion to suppress the evidence should have been granted and, therefore, reversed her conviction. The Supreme Court of Alabama denied the State's petition for a writ of *certiorari*.

The United States Supreme Court granted *certiorari* in order to resolve a conflict in the state and federal courts "over whether an anonymous tip may furnish reasonable suspicion for a stop." *Alabama v. White, supra* at 328, 110 S.Ct. 2412. The United States Supreme Court noted that, similar to determinations of probable cause, reasonable suspicion determinations are considered under the "totality of the circumstances—the whole picture." *Id.* at 330, 110 S.Ct. 2412, *citing United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). However, unlike probable cause, reasonable suspicion is a less demanding standard, not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Id.*

Applying this lesser standard to the facts of the case, the Court concluded that, when the officers stopped White, the anonymous tip had been sufficiently corroborated so as to furnish reasonable suspicion that White was engaged in criminal activity; therefore, the investigative stop did not violate the Fourth Amendment to the United States Constitution. The Court acknowledged that important details of the anonymous tip—specifically the fact that White would be carrying an attaché case that allegedly contained drugs—had gone uncorroborated. However, the tipster had been correct about White's time of departure, place of departure, vehicle in which she departed and, apparently, White's destination.[3] Thus, the Court reasoned that "the independent corroboration by the police of significant aspects of the informer's predictions im-

3. The Court acknowledged that the officers could not have been positive that White was driving to the specified motel since they stopped her before she reached it.

parted some degree of reliability to the other allegations made by the caller." *Id.* at 332, 110 S.Ct. 2412.[4] The corroboration of predictive information pertaining to White's future behavior was significant "because it demonstrated inside information—a special familiarity with respondent's affairs." *Id.* Since only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is also likely to have access to reliable information about the individual's illegal activities. *Id.*

I have little doubt as to how the two matters at issue should be resolved in light of *Alabama v. White.* Indeed, in *Commonwealth v. Hawkins,* 547 Pa. 652, 692 A.2d 1068 (1997), this Court noted that, under *Alabama v. White,* "if the tip is anonymous, police may reasonably rely on it if it is predictive of the suspect's behavior." *Id.* at 656 n. 3, 692 A.2d at 1070 n. 3.[5] The principles expressed by this Court in *Hawkins* and by the United States Supreme Court in *Alabama v. White* are inexplicably abandoned by the majority in this matter.

In *Commonwealth v. Wimbush,* the facts adduced at trial demonstrate that on February 13, 1993, State Trooper Richard Gergel received an anonymous call during which the caller provided the registration number of a white van that the caller said was owned by an African–American male named Tony. The caller *predicted* that this vehicle later that evening would be proceeding along Piney Ridge Road, a limited access road in Huntington County, and would be carrying marijuana and

4.  The United States Supreme Court's recent decision in *Florida v. J.L.,* —— U.S. ——, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), in no way impacts on the application of *White* to the cases *sub judice.* In *J.L.,* unlike in *White* or the cases *sub judice,* the anonymous tip did not contain any predictive information, but merely stated that a young black male wearing a plaid shirt and standing at a particular bus stop— facts that could be reported by anyone looking out a window—was carrying a gun. Accurately predicting someone's movements, however, is an entirely different matter. Thus, *J.L.* is more analogous to *Hawkins, supra.*

5.  In *Hawkins,* the anonymous tip did not predict any future behavior. Therefore, a majority of this Court found that the tip in question was not sufficient to justify a *Terry* stop. *Hawkins, supra* (Newman and Castille, JJ., dissenting, Nigro, J., concurring in the result).

drugs in the vehicle.[6] The police obtained the registration number of the vehicle in question and found that the vehicle was registered to Anthony Wimbush. The officers also contacted the state police barracks in the area where the vehicle was registered and determined from officers there that Anthony Wimbush was a known suspect in drug activity.

Having corroborated the non-predictive aspects of the tip, and having performed independent police work to uncover further details concerning the criminal activities of the subject of the tip, the officers proceeded to Piney Ridge Road. There, they observed a van that matched the relevant description and registration numbers travelling north along Piney Ridge Road. The officers followed the van and observed it exceeding the speed limit and driving on the wrong side of the highway.[7] Finally, having corroborated the predictive aspects of the tip, having observed the erratic and unlawful operation of the van, and having performed independent police work with respect to the suspected drug activities of the van operator, the officers pulled the van over for an investigative stop.

6.  Because this tip provided information as to Wimbush's actions later in the evening and Wimbush did not begin to travel down Piney Ridge Road until after the police arrived at that location, the police were not merely "verifying facts in existence at the time of the tip," as the majority contends. *See* Op. at 814 n. 6.

7.  The majority discounts the observations concerning traffic violations by claiming that the suppression court deemed them pretextual. This is quite simply not supported by the record. Although all parties agreed that the van was not stopped because it was exceeding the speed limit, the parties also agreed that the van was in fact exceeding the speed limit, and that this could be evaluated as an independent basis for the stop, as evidenced by the following exchange:

    PROSECUTOR: I am saying there are two bases for the stop ... Independently the stop can be justified due to the fact that there were traffic violations. We can't ignore that ... The question is whether Trooper Granlund would have been justified in stopping the vehicle for those traffic violations to issue a citation.
    THE COURT: Certainly.
    DEFENSE COUNSEL: Yes, he would.
    (R. at 49–50).
    Clearly, this testimony supported the suppression court's finding of fact that the van was navigating curves on the wrong side of the highway and that the speed of the vehicle was excessive.

In sum, not only did the officers here take the minimum corroborative measures necessary to justify an investigative stop based exclusively on a predictive anonymous tip under *Alabama v. White*, they also developed reasonable suspicion through independent measures, culminating in the observations of unlawful operation of the vehicle. Since *Alabama v. White* is the barometer by which an officer's conduct must be measured in this context, the only possible conclusion is that the conduct of these officers was unassailable for Fourth Amendment purposes.

In *Commonwealth v. White*, Officer Traci Matthews received an anonymous telephone call about possible drug activity at a certain named public housing complex. The caller stated that an African–American male, wearing a white shirt and white shorts, would shortly exit the complex with illegal drugs in his possession and leave on a girl's black bicycle. Officer Matthews responded immediately and arrived at the specified complex minutes later. After circling the area in her patrol vehicle, she observed appellant, an African–American male, emerge wearing white shorts and a white shirt. Appellant mounted a girl's black bicycle and began to depart. Officer Matthews caught up to appellant, stopped him and informed him of the 911 call, and inquired as to whether she might ask him a few questions. Although appellant agreed, Officer Matthews noted that appellant was extremely nervous and she asked whether she could briefly check him for weapons. As she attempted to initiate a limited pat-down, appellant turned and fled, leaving the bicycle behind. Officer Matthews conveyed this information over police radio.

Sergeant Floyd Newingham responded immediately when he heard the radio call indicating that appellant had fled. Arriving at the area of the housing complex, Sergeant Newingham observed a man matching appellant's description running across the street in front of him and ordered him to stop. After complying with this order, appellant surreptitiously discarded a small plastic bag that was later determined to contain three grams of crack cocaine. Officer Matthews arrived immediately thereafter and identified appellant.

The only question for purposes of this appeal is the propriety of the initial investigative stop by Officer Matthews. If this stop was supported by a reasonable suspicion of criminal activity, then the evidence in the small plastic bag was not the result of a "coerced abandonment" and it was properly deemed admissible.[8]   Again, as in *Alabama v. White*, the officer here corroborated the predictive aspect of the tip as well as the descriptive aspects of the tip.   As this Court properly noted in *Hawkins*, "if the tip is anonymous, police may reasonably rely on it if it is predictive of the suspect's behavior."   *Hawkins, supra* at 656 n. 3, 692 A.2d at 1070 n. 3. Quite simply, this tip predicted that appellant would shortly exit the complex and depart on a girl's black bicycle.   Officer Matthews watched as appellant fulfilled this prediction exactly.   "[T]he independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller."   *Alabama v. White, supra* at 332, 110 S.Ct. 2412.[9]

In determining that the *Terry* stops in these two matters were not supported by reasonable suspicion, the majority relies on the fact that the independent observation by police did not provide any corroboration of the *criminal* aspects of the anonymous tips.   *Alabama v. White*, however, only requires that the police have independent corroboration of the *predictive* aspect of the tips.   *Id.* By holding that the police must corroborate the criminal aspects of the tip, the majority has raised the standard for an investigative stop set forth in

8.   Appellant challenges only the initial stop, not the subsequent request by Officer Matthews to perform a *Terry* frisk for her own protection.

9.   The majority opinion attempts to distinguish the prediction in *Alabama v. White* from this prediction by asserting that "anyone in the King's Residence complex could have been aware of [appellant]'s ... mode of transportation on the day in question."   This naked speculation is devoid of legal significance.   Having read *Alabama v. White* carefully, I could nowhere find any indication that a prediction loses its ability to be a meaningful indicator of reliability if there is some possibility that other people in the world might be able to make the same prediction.   In any event, I find it highly unlikely that at the time of this tip, a significant number of people in the housing complex at issue were cognizant of the fact that appellant would depart the complex within minutes on a girl's bicycle.

*Alabama v. White* from reasonable suspicion to probable cause.

The societal interest in allowing police officers to ask questions on the basis of a common-sense suspicion is compelling. One wonders how else police officers can advance cases such as these without asking questions of the suspects. The only possible alternative here was to allow the suspects to pass on unimpeded and follow them in an attempt to discover direct evidence of criminal conduct. But following suspects further would most likely yield no rewards unless the suspects were so simple-minded as to carry on their criminal activity in public. To say that the officers could have procured the cooperation of other witnesses is to ignore the reality that gives rise to *anonymous* reports of criminality to begin with— namely, citizens are frequently in mortal fear of drug dealers, and often with good reason. One can only conclude that there will frequently be *nothing* that officers can do in the wake of this opinion to justify an investigative stop. Instead, they must allow criminal activity to go forth unabated, even when concerned but fearful citizens try to alert them to such criminal activity, when they first corroborate the predictive information supplied by these citizens, and when all they seek to do is ask questions.

This decision protects our citizens against what the majority must conclude to be the ominous specter of having to answer a few questions posed by hard-pressed police; all it surrenders in exchange is the ability of law enforcement officers to do their jobs. Moreover, the decision today clearly contradicts the pronouncement of the nation's high Court in *Alabama v. White*.[10] Therefore, I dissent.

Justice NEWMAN joins this dissenting opinion.

---

10. Of course, the United States Supreme Court can once again correct the mistake the majority makes today regarding the scope of the Fourth Amendment. *See, Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(reversal by U.S. Supreme Court on Fourth Amendment issue); *Pennsylvania v. Kilgore*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)(same); *Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988)(same); *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)(same).