J-A30034-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TYLER COOPER MCQUAID, | : | |
| | : | |
| Appellant | : | No. 372 WDA 2018 |

Appeal from the Judgment of Sentence February 15, 2018
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002539-2017

BEFORE:    SHOGAN, J., KUNSELMAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    **FILED FEBRUARY 7, 2019**

Tyler Cooper McQuaid (Appellant) appeals from the February 15, 2018 judgment of sentence of three to six days of incarceration following his nonjury convictions for driving under the influence (DUI) of a controlled substance and DUI of a controlled substance - impaired ability.  Specifically, Appellant challenges the denial of his pretrial suppression motion.  Upon review, we reverse.

At 3:08 p.m. on November 25, 2016, Officer Joseph Daransky of the Leetsdale Borough Police Department received a 911 dispatch for an unconscious male in the driver's seat of a red Toyota Corolla, with a specified license plate number, in the Wendy's parking lot at the Quaker Valley Village Shopping Center.  N.T., 10/13/2017, at 5-7.  When Officer Daransky arrived at the Wendy's parking lot approximately two minutes

---

*Retired Senior Judge assigned to the Superior Court.

later, he did not find any vehicle matching the 911 dispatch. *Id.* at 9-10. However, as Officer Daransky was leaving the Wendy's parking lot, he observed a male driving a red Corolla, with a license plate matching the dispatch description, making a right-hand turn out of the GetGo gas station across the street. *Id.* at 10-11, 17. At that point, Officer Daransky activated his overhead lights and siren to initiate a traffic stop for the purpose of checking on the well-being of the driver based on the 911 dispatch. *Id.* at 12-13, 18.

Appellant complied with the traffic stop. At no point while Appellant was driving did Officer Daransky observe Appellant commit any motor vehicle violations. *Id.* at 13-15. After backup arrived, Officer Daransky approached Appellant as he sat in the driver's seat of the vehicle. *Id.* at 14. Appellant's eyes were glassy, red, and the pupils were dilated. *Id.* at 15. Based on these observations, Officer Daransky believed that Appellant may have been under the influence of a controlled substance and asked him to perform three field sobriety tests. *See* Affidavit of Probable Cause at 2.[1] Based on his performance of the tests and Officer Daransky's observations, Appellant was placed under arrest for DUI of an unknown controlled

---

[1] At the nonjury trial, counsel for both parties stipulated to the entry of the affidavit of probable cause, Officer Daransky's suppression hearing testimony, the incident report, the lab report for Appellant's blood draw, and photographs from the scene, to establish the elements of the crimes charged. N.T., 2/15/2018, at 2-3.

substance. *Id.* Thereafter, Appellant was subjected to a blood draw, which revealed the presence of cannabinoids and fentanyl in his blood. N.T., 2/15/2018, at 3.

Prior to trial, Appellant filed a motion to suppress. A hearing was held where the aforementioned facts were developed. The trial court took the matter under advisement, and denied the motion on January 18, 2018.[2] N.T., 1/18/2018, at 2. Thereafter, Appellant was convicted following a stipulated nonjury trial and sentenced as indicated above.

Appellant timely filed a notice of appeal.[3] Appellant presents one question for this Court's consideration: "Whether the trial court erred in denying [Appellant's] motion to suppress evidence obtained during a traffic stop that was predicated entirely on an uncorroborated anonymous tip, and thus was not supported by reasonable suspicion, in violation of the federal

---

[2] The trial court did not issue its suppression findings of fact and conclusions of law, as mandated by Pa.R.Crim.P. 581(I), until after Appellant filed this appeal. *See* Trial Court Opinion, 4/13/2018. *See also* N.T., 1/18/2018, at 2; N.T., 2/15/2018, at 3. "[T]he filing of a 1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing in accordance with Pa.R.Crim.P. 581(I)." *Commonwealth v. Grundza*, 819 A.2d 66, 68 n.1 (Pa. Super. 2003). *See also Commonwealth v. Millner*, 888 A.2d 680, 688–89 (Pa. 2005) (explaining the important purposes served by Rule 581(I)). However, in light of our disposition, this error is moot.

[3] Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its previously written but unfiled findings of fact and conclusions of law, *see supra* n.2, to satisfy the mandates of Pa.R.A.P. 1925(a).

and Pennsylvania constitutions." Appellant's Brief at 4 (unnecessary capitalization omitted).

We consider Appellant's question mindful of the following.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

**Commonwealth v. Perel**, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting

**Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010)).

Our jurisprudence delineates interactions between police and citizens into three levels.

The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. …

***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

In denying Appellant's suppression motion, the trial court concluded that Officer Daransky's activation of his lights and siren to conduct a traffic stop constituted a mere encounter to check on Appellant's well-being based on the 911 dispatch, and therefore Officer Daransky did not need reasonable suspicion to initiate the stop. Trial Court Opinion, 4/13/2018, at 3 (unnumbered). On appeal, Appellant argues that the traffic stop amounted to an investigative detention, requiring reasonable suspicion to justify the stop. Appellant's Brief at 10-11 (citing ***Commonwealth v. Livingstone***, 174 A.3d 609 (Pa. 2017))[4]. The Commonwealth defers to this Court as to whether the trial court committed legal error in concluding that the traffic stop was a mere encounter. Commonwealth's Brief at 7.

In ***Livingstone***, which was decided approximately two months before the trial court's denial of Appellant's suppression motion, our Supreme Court held that the activation of a police vehicle's lights and sirens to initiate a traffic stop constitutes an investigative detention. In so holding, our Supreme Court explained as follows.

> It is undeniable that emergency lights on police vehicles in this Commonwealth serve important safety purposes, including ensuring that the police vehicle is visible to traffic, and signaling to a stopped motorist that it is a police officer, as opposed to a

---

[4] "While each section of the opinion garnered different votes, we note that all sections of ***Livingstone*** obtained a majority." ***Commonwealth v. Edwards***, 194 A.3d 625, 633 (Pa. Super. 2018).

> potentially dangerous stranger, who is approaching. Moreover, we do not doubt that a reasonable person may recognize that a police officer might activate his vehicle's emergency lights for safety purposes, as opposed to a command to stop. Nevertheless, upon consideration of the realities of everyday life, particularly the relationship between ordinary citizens and law enforcement, we simply cannot pretend that a reasonable person, innocent of any crime, would not interpret the activation of emergency lights on a police vehicle as a signal that he or she is not free to leave.

174 A.3d at 621 (citation omitted).

Accordingly, pursuant to **Livingstone**, once Officer Daransky activated his vehicle's lights and siren to initiate the traffic stop, Appellant was subjected to an investigatory detention. Therefore, the trial court erred in finding the interaction was a mere encounter. However, our inquiry does not end there. We must now determine whether Officer Daransky possessed reasonable suspicion necessary to stop Appellant's vehicle.

> An investigatory stop, which subjects a suspect to a stop and a period of detention but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability. Thus, quantity and quality of information are considered when assessing the totality of the circumstances. If information has a low degree of reliability, then more information is required to establish reasonable suspicion.

**Commonwealth v. Wimbush**, 750 A.2d 807, 811 (Pa. 2000) (citations omitted). "When the police receive unverified information that a person is engaged in illegal activity, the police may observe the suspect and conduct an investigation. If police surveillance produces a reasonable suspicion of

criminal conduct, the suspect may be stopped and questioned." ***Id.*** at 811-12.

Here, it is undisputed that Officer Daransky did not observe Appellant commit any motor vehicle violations prior to activating his lights and siren for a traffic stop. Rather, the traffic stop was initiated for a well-being check based solely on the 911 dispatch. Namely, the anonymous[5] call to 911 alleged that a male was unconscious behind the steering wheel of a specific red Corolla in a specific Wendy's parking lot. Upon arriving on scene, Officer Daransky did not find any evidence to corroborate this anonymous tip. Rather, he observed the driver of the identified Corolla to be conscious and making a right-hand turn out of a GetGo gas station. Thus, there was no corroboration of the anonymous tipster's allegations; Officer Daransky's brief surveillance in fact **refuted** the allegations.

Although essentially abandoned on appeal, the Commonwealth argued at the suppression hearing that the stop could be justified by Officer Daransky's acting pursuant to the public servant exception of the community caretaking doctrine. Commonwealth's Brief at 10 (citing N.T., 10/13/2017, at 13-14). The community caretaking doctrine encompasses three

---

[5] The Commonwealth did not establish at the suppression hearing that the caller was identified, and on appeal it concedes that "Appellant succinctly explains in his brief and supplemental brief why the **anonymous** 911 call alone was insufficient and that Officer Daransky observed nothing to support the information from the call." Commonwealth's Brief at 10 (emphasis added; unnecessary capitalization omitted).

exceptions: "the emergency aid exception; the automobile impoundment/inventory exception; and the public servant exception[.]" **Livingstone**, 174 A.3d at 627-28. In **Livingstone**, our Supreme Court recognized that "police officers engage in a myriad of activities that ensure the safety and welfare of our Commonwealth's citizens. Indeed, we want to encourage such laudable activity. However, even community caretaking activity must be performed in accordance with Fourth Amendment protections." 174 A.3d at 629. As such, the Court held that "in order for the public servant exception of the community caretaking doctrine to apply, police officers must be able to point to specific, objective, and articulable facts that would reasonably suggest to an experienced officer that a citizen is in need of assistance." **Id.** at 634.

Based on the foregoing, we conclude that any perceived reason to check on the well-being of an unconscious individual was nullified upon Officer Daransky observing that Appellant was conscious and driving without committing any motor vehicle violations. Simply stated, there were no facts that Officer Daransky could point to suggesting that Appellant was in need of assistance.

As well-intentioned as Officer Daransky's motives may have been, based upon our review of the record, we conclude that there is no evidence to support a finding that he possessed the reasonable suspicion necessary to stop Appellant's vehicle. Because he did not possess such reasonable

suspicion, the investigatory detention was illegal, and the trial court erred in concluding otherwise. Accordingly, we vacate Appellant's judgment of sentence and reverse the order denying the suppression motion.

Judgment of sentence vacated. Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 2/7/2019